EDWARD ABDUL, BY PETER LEE, GUARDIAN AD LITEM, *v.* AMERICAN FACTORS, LIMITED, DOING BUSINESS UNDER THE NAME AND STYLE OF THE LIBERTY HOUSE.

No. 2055.

ARGUED AUGUST 23, 1932.            DECIDED SEPTEMBER 8, 1932.

PERRY, C. J., BANKS AND PARSONS, JJ.

504

OPINION OF THE COURT BY BANKS, J.

On June 25, 1931, Edward Abdul, a minor, sought redress against the Liberty House under the Workmen's Compensation Act by filing with the industrial accident board of the City and County of Honolulu a claim for compensation for two injuries, one alleged to have occurred on January 17, 1931, and the other on May 18 of the same year. The board denied both claims, the first on the ground that it was not filed within the statutory period and the second on the ground that it "had no causal bearing upon the condition which resulted in the disability of the claimant." The claimant appealed to the circuit court of the first judicial circuit. After the appeal and while the case was pending in that court the claimant was allowed to substitute for the Liberty House as party defendant the American Factors, Limited,

an Hawaiian corporation. After a hearing on the law and the facts the circuit court, jury having been waived, rendered a written decision in which it was held that the action of the industrial accident board in denying the claimant's first claim should be reversed. Regarding the second claim, the court held that the action of the board was proper and should be sustained. Judgment was entered in accordance with this decision. The defendant excepted to the decision and judgment so far as they related to the first claim and has brought the case here by writ of error. The claimant has taken no steps to have the court's decision and judgment regarding the second claim reviewed, and this claim therefore need not be considered.

It is contended by the defendant that the claimant is not entitled to maintain the instant proceeding for two reasons, first, because it is shown by the evidence that he did not give notice of his injury to the defendant, his employer, as required by the Workmen's Compensation Act, and, second, because he did not file his claim for compensation with the board within the time prescribed by the Act. It is conceded by the claimant that the statutory notice of injury was not given and also that the claim for compensation was not filed within the statutory period. He contends, however, that under the evidence and the provisions of the Act these steps were unnecessary. The provisions of the statute pertinent to this construction are as follows:

" * * * If medical, surgical or hospital services and supplies have been provided voluntarily by the employer * * *, the giving of a notice of the injury within the aforesaid period shall not be required, and if payments of compensation shall have been made voluntarily by the employer * * * the making of a claim within the aforesaid periods shall not be required." (Sec. 3624, R. L.

1925, as amended by Act 93, L. 1931.)

" * * * Want of notice or delay in giving notice shall not be a bar to proceedings under this chapter if it be shown that the employer, his agent or representative, had knowledge of the accident." (Sec. 3627, R. L. 1925.)

It appears from the evidence that on January 17 or 19, 1931, Edward Abdul, the claimant herein, a boy about seventeen years of age, was regularly employed at the Liberty House, a department store in Honolulu which was owned and operated by the American Factors, Limited, an Hawaiian corporation. On one of the dates above mentioned Edward, while engaged in the duties of his employment, was struck on the left leg by a two-wheeled metal delivery truck that was being operated inside the building by a coemployee. The ultimate result of the injury was sarcoma, which in May, 1931, necessitated the amputation of the injured leg. On the evening of the accident, and after Edward had returned to his home, his mother, with whom he lived, telephoned to Lloyd E. Fuller, superintendent of the Liberty House, and informed him that Edward's leg had been hurt in the store and told him to see that he was sent to a doctor. On the morning after the accident Edward returned to the Liberty House to resume his work. On that day, or the following day, he saw Mr. Fuller, and in his testimony given at the hearing before the circuit court he stated that he told Fuller that he had been "bumped by a truck at the store." Fuller, when called as a witness by the defendant, testified that on January 20 he interviewed Edward and stated to him the telephone message he had received from his mother and asked him if he was hurt in the store, explaining to him that it was necessary to have this information in order to make a report of the accident and file it with the insurance carrier and that in response to this inquiry Edward stated that he was not hurt in the

store.

It appears from the evidence that at the time of Edward's injury there existed at the Liberty House an organization which is referred to as the welfare structure. One of the purposes of this structure was to establish a fund out of which medical and hospital treatment should be provided for employees at the Liberty House who received injuries during the time of their employment, whether such injuries were compensable under the Workmen's Compensation Act or not. Another purpose of the structure was to establish a fund for the payment to such employees, for a certain period during their incapacity, of what was equivalent in amount to their wages. Every person applying for employment, after passing a satisfactory examination, was required before permanent acceptance to subscribe to and become a member of this welfare structure. The fund out of which medical expenses, including the services of a physician and ordinary medicines, were paid was contributed by the employees themselves. The employer collected these contributions by withholding from each employee a certain percentage of his wages and placing the money so collected in the fund. The remainder of the fund, including what was to be paid injured employees in lieu of wages and what was to be used for providing hospital services and supplies, was contributed solely by the employer.

During a portion of the time that intervened between the accident which caused his injury and the filing of his claim with the industrial accident board for compensation Edward was given medical and hospital service which was paid for out of the welfare structure fund. Also there was paid to him out of this fund, during certain periods when he was unable to perform his work, an amount equal to his wages. Under the welfare structure an employee who receives an injury under circumstances

that bring him within the provisions of the Workmen's Compensation Act and who is awarded compensation is required to reimburse the welfare structure fund for what he has received from it. The amount necessary to make this restitution is deducted by the employer's insurance carrier from the amount of compensation payable to the employee and passed on to the employer, who places it to the credit of the welfare structure fund. It is out of the foregoing facts that the claimant's contention arises that under the Workmen's Compensation Act he was relieved of the necessity of giving the notice of his injury prescribed by the Act and of filing his claim within the statutory period.

So far as his failure to give notice is concerned, the claimant makes two contentions. The first is that such notice was unnecessary because Fuller, the superintendent of the Liberty House, acquired "knowledge of the accident" through the telephone message he received from Edward's mother on the night following the day when the accident occurred and also through Edward's own statement to Fuller at the Liberty House on the day after the accident that "he had been bumped by a truck in the store." If Fuller was in fact informed by Edward's mother that Edward had been hurt in the store, and also by Edward that he had been bumped by a truck in the store, we think there can be no question that such information sufficiently conveyed to Fuller knowledge of the accident to render the giving of the statutory notice unnecessary. Section 3627 of the statute expressly absolves the injured employee from giving notice "if it be shown that the employer, his agent or representative, had knowledge of the accident." The legislature certainly never intended to restrict the means of acquiring this knowledge to the actual seeing of the accident. Knowledge is acquired through other senses than that of sight.

It does not necessarily mean first-hand knowledge. It does not require proof that the employer witnessed the accident. In common usage the word "knowledge" comprehends specific information, however obtained. *Bartlett's Case,* 125 Me. 374. In *Allen* v. *City of Millville,* 87 N. J. L. 356, 95 Atl. 130, the court said: "The actual knowledge of the occurrence of any injury required by the Workmen's Compensation Act does not mean the first-hand knowledge of an eyewitness, but what would be called knowledge in common parlance."

It is true that there is conflict between Edward's testimony and that of Fuller, as to what the former said to the latter about where and how the accident occurred. It is not entirely clear from the decision of the circuit judge that he made a specific finding regarding the conflict between these two witnesses. There are passages in his decision, however, which indicate that he was of the opinion that Fuller had information that the accident occurred at the Liberty House. For instance, in one place he says: "The evidence is also clear that on or about the 19th of January, 1931, Edward had a bump in the store on his knee and that finding is supported by the fact that he at that time suffered sufficient pain to report that incident to his mother and to have her report the incident to Mr. Fuller. I think this is undisputed: the source of the mother's information came from the boy and the source of Mr. Fuller's information came from the mother. The evidence also supports the finding that Mr. Fuller, for the employer, sought to get definite information from Edward without result,—tried to check up that story without getting any further with the facts from Edward. What caused Edward to be reticent or to refrain from aiding that investigation is not clear; but at any rate the fact is clear that Edward did not respond to the inquiries of Mr. Fuller or Miss Merrill to determine the

facts about the incident that he had reported to his mother, yet it is clear to the court that there was something in the nature of a bump received by Edward on or about January 19th at the location which thereafter was found to be diseased. The evidence is also clear that from that time, January 19th, regardless of the inability of Mr. Fuller or Miss Merrill to find out the history of the situation, there was a swelling that continued and limping that continued and there was medical attention given and treatment to relieve or attempt to relieve the condition of swelling, contributed by the process contemplated by the structure of the welfare organization so called." In another place he says: "The court is prepared to find, therefore, as far as the three months bar of the statute is concerned, that it had not begun to run; or that it had not run at the time this claim for compensation was made with reference to the January 19th situation. The court is inclined to reason that out, not from any standpoint of any desire to let sympathy overweigh judgment but rather from the standpoint of trying to determine what part of the workmen's compensation structure this private arrangement welfare structure of the Liberty House system plays in the question of the tolling of the statute. I feel that that is notice of claim to the employer,—but if that welfare structure is then put into operation and the employer notified that there has been an accident—the fact that in this case Edward was an unsatisfactory informant when the information is sought by Mr. Fuller doesn't alter the fact that there was a report made to the mother who passed it on to Mr. Fuller; so that that part of the statute was complied with, and thereafter the welfare structure growing out of this situation went into effect whether or not there was an investigation of that situation." While the language used by the judge is not as free from ambiguity as it

might have been it does indicate his belief that under the evidence Fuller had knowledge of the accident. This finding, being supported by credible evidence, we think should not be disturbed.

Whatever may be said about the finding of the circuit judge regarding Fuller's knowledge of the accident, there is no doubt about the soundness of the claimant's second contention concerning this phase of the case. This contention is that it appears from the undisputed evidence that during periods of Edward's disability the defendant voluntarily furnished him with hospital services and supplies and that under section 3624, R. L. 1925, this dispensed with the necessity of giving the statutory notice of his injury. The section referred to specifically exempts the employee from giving notice of his injury "if medical, surgical or hospital services and supplies have been provided voluntarily by the employer." It is not denied that during Edward's confinement in a hospital the services he received and the supplies that were furnished him were paid for out of the welfare structure fund, the portion of which that was used for this purpose being contributed solely by the defendant.

We cannot agree with the defendant's contention that because this money came out of a fund that was provided for all disabled employees, whether their injuries were compensable under the Workmen's Compensation Act or not, the services furnished Edward were not furnished by his employer within the meaning of section 3624. The essential facts are that Edward's injury occurred under circumstances that brought his case within the Workmen's Compensation Act and that the hospital services which he received were paid for by the defendant out of its own funds. The mere fact that it first placed the money in the hospital structure fund makes no more difference than if it had placed it in a bank and designated it a fund for

512

furnishing hospital services to injured employees. In both instances the money remained the property of the defendant and was subject to its disposal.

It is contended by the defendant that even if it provided hospital services and supplies to Edward it was not done voluntarily but under statutory compulsion and therefore did not do away with the necessity of giving the required notice of the injury. In support of this contention our attention is called to section 3615, R. L. 1925, which is a part of the Workmen's Compensation Act. This section provides that "immediately after an injury sustained by an employee and during the resulting period of disability, the employer shall furnish to the employee such medical, surgical and hospital services and supplies as the nature of the injury may require."

The argument is advanced that inasmuch as this section makes it mandatory on the employer to furnish the services and supplies designated the furnishing of such services and supplies to Edward was not and could not have been voluntary. Agreement with this argument would lead to the strange conclusion that the legislature prescribed a condition under which notice of injury need not be given after having made it impossible for the condition to exist. In other words, it would be to impute to the legislature the intention of saying in one breath that there can be no such thing as a voluntary furnishing of medical, surgical and hospital services and in the next breath the intention of saying that if such services and supplies are furnished notice of the injury need not be given. We think a proper construction of this statute does not lead to this anomaly. Many statutes are mandatory in their requirements that certain acts be performed and yet it cannot be said that if they are performed without judicial compulsion the performance was involuntary. We think this is the sense in which the

provision in section 3624 regarding the voluntary furnishing of certain services to an injured employee was used. If the employer acts without judicial compulsion his act is voluntary although required by the statute.

The final question presented is whether the claimant's failure to file with the industrial accident board a claim for compensation within three months after the accident is a bar to his recovery. Section 3624, R. L. 1925, as amended by Act 93, L. 1931, provides that "if payments of compensation shall have been made voluntarily by the employer * * * the making of a claim within the aforesaid periods shall not be required." As we have already observed, it is undisputed that during certain periods of Edward's disability he received out of that portion of the welfare fund which was furnished solely by the defendant sums of money equivalent to the wages that would have been paid him had he been at work.

It is contended by the defendant that these sums were not paid as compensation for Edward's injury under the Workmen's Compensation Act but as wages under the welfare structure and therefore section 3624 has no application. We think this contention cannot be sustained. The money that was placed in the welfare fund for the purpose of protecting injured employees from loss on account of disability, like the money that was placed there to provide hospital services and supplies, was contributed solely by the defendant. It was purely a voluntary contribution and remained the property of the defendant. When Edward received a portion of the fund it cannot be said in any true sense that he received it as wages. Wages are paid for services performed and Edward during these periods rendered no service. Moreover, if payments are voluntarily made as wages they are final and not recoverable by the employer. In the instant case the employee is bound, his injuries being compensable under

the Workmen's Compensation Act, to return to the organization, that is, to the defendant, the compensation for loss of wages which he receives under the award of the industrial accident board.

The money given Edward was either a gratuity or it was by way of compensation for his injury. If his injury had not been compensable under the Workmen's Compensation Act it would have been a gratuity from his employer. Inasmuch, however, as it does come within that class of injuries it was not a gratuity but of necessity an advancement of compensation. This is conclusively shown by the fact that he is required to make restitution out of the compensation that may be awarded him by the industrial accident board. When an employer makes payments to an employee who knows that he has been injured under circumstances that entitle him to compensation under the Workmen's Compensation Act, the natural effect would be to lull the employee into a feeling that the employer intended to acknowledge his claim and that he need not make any formal demand. It was no doubt in recognition of this that the legislature embodied in the statute the clause regarding the effect of payments of compensation.

For the foregoing reasons the judgment of the circuit court is affirmed.

*C. A. Gregory* (*Smith, Wild & Beebe* on the briefs) for plaintiff in error.

*W. Y. Char* (also on the brief) for defendant in error.