[Civ. No. 12849.   First Dist., Div. Two.   Oct. 3, 1945.]

CLARA WILLIAMS, Petitioner, v. INDUSTRIAL ACCI-
DENT COMMISSION et al., Respondents.

Henry G. Sanford for Petitioner.

Everett A. Corten and R. C. McKellips for Respondents.

DOOLING, J. pro tem.—This is a proceeding to review an
award of the Industrial Accident Commission denying com-

pensation to the petitioner, Henry C. Williams. After the submission of the cause to this court the original petitioner died and by stipulation his widow, Clara Williams, has been substituted as petitioner herein.

The respondent commission found that Williams' claim for compensation was barred by the statute of limitations and the only question here presented is whether this finding is substantially supported by the evidence.

Williams was born October 4, 1868. In 1882 he started to work as a molder and thereafter continued to work as a molder until 1934. In 1905 he came to California and commenced to work as a molder for respondent Graham Manufacturing Co. Except for a period of something like three years, during which he worked as a molder for respondent H. C. McCaulay Foundry Company, he was employed by respondent Graham Manufacturing Co. as a molder with only inconsequential interruptions until February, 1934. At that time he submitted to an operation for a hernia and thereafter worked on a farm near Turlock until 1936 when he returned to the employment of Graham Manufacturing Co., not as a molder but as night-watchman. He continued to work for the same employer as night-watchman uninterruptedly until November 23, 1942.

In June, 1940, during a two weeks' vacation with pay Williams consulted a physician, Dr. Grimmer, and asked for an X-ray of his chest. Grimmer took the X-ray pictures as requested and recommended, after viewing the X-rays, that Williams take them to another physician, Dr. Trimble, for his opinion and advice. At that time both physicians concluded that Williams was suffering from occupational silicosis of the lungs without disability. Williams underwent no treatment, and incurred no medical expense by reason of this condition except the cost of the examination by these two physicians, until November 23, 1942. At that time he contracted a severe cold which aggravated the preexisting condition of silicosis and his employment as night-watchman was terminated. He filed his application for adjustment of claim with the respondent commission on January 26, 1943.

The commission made the following finding:

"He was aware in 1940 that he suffered silicosis. Since 1936 to November 23, 1942, he worked as a watchman for this employer at a considerable reduction in pay which would have entitled him to compensation on a wage loss basis had he applied for such compensation within time. The date of in-

jury herein, within the meaning of the Workmen's Compensation Laws, is June, 1940. The application herein was not filed until January 26, 1943. No compensation has been paid, and no medical treatment has been furnished nor has any been promised by any of the defendants. The claim herein is therefore barred by the Statute of Limitations.''

The law with respect to the running of the statute of limitations in cases of occupational disease has become well settled in this state. The leading case is *Marsh* v. *Industrial Acc. Com.*, 217 Cal. 338 [18 P.2d 933]. The occupational disease there involved was, as in this case, pulmonary silicosis. In that case, after an exhaustive review of the cases from other jurisdictions, the court on page 351 announced the following rule:

''From our study of the subject we are brought to the conclusion that in the case of a latent and progressive disease, such as pneumoconiosis [pulmonary silicosis], it cannot reasonably be said that the injury dates necessarily from the last day of exposure to a dust-laden atmosphere and that the prescriptive period begins to run from that day. Rather, according to our view, should the date of the injury be deemed the time when the accumulated effects culminate in a disability traceable to the latent disease as a primary cause, and by the exercise of reasonable care and diligence it is discoverable and apparent that a compensable injury was sustained in performance of the duties of the employment.''

In *Price* v. *Industrial Acc. Com.*, 9 Cal.App.2d 213 [49 P.2d 294] the court after quoting from the Marsh case added (pp. 215-216):

''In the latter case the court disapproved the holding of the commission that the statute of limitations began to run as of the date the employee was first disabled from work, and indicates that in cases of this type the running of the prescription period begins when the presence of silicosis was or should have been diagnosed as the primary and efficient cause of the injury. It appears quite obvious from the evidence that petitioner, from the inception of his cough until he received the X-ray report on May 30, 1934, had no idea or reason to believe that he was suffering from a compensable injury, silicosis, arising out of and incurred in the course of his employment. . . . . It is wholly unreasonable to argue, as to [do?] the respondent insurance carriers, that the employee should, through the exercise of reasonable care and diligence,

have known in November of 1933 that which his medical adviser did not discover in February of 1934."

In *Argonaut M. Co.* v. *Industrial Acc. Com.*, 21 Cal.App. 2d 492 [70 P.2d 216] the court again considered the same question and stated (pp. 496, 497, 499, 500):

"In the present case there is substantial evidence in support of the findings of the commission that, while Blass Jurovich did know in 1933 that he was afflicted with silicosis from inhaling mineral dust in the mines where he had been employed, there is no evidence that he knew, or by the exercise of due diligence should have known, that the disease had disabled him to the extent that the efficiency of his work was impaired until February 16, 1936, when he abandoned the job. The burden of proving that the claim for compensation was barred by the statute of limitations was upon the respondents who opposed the claim. We are unable to say they have sustained this burden by showing that the claimant had any knowledge of the extent of his ailment, or that he should have had such knowledge as would entitle him to recover compensation.

". . . In the case last cited [*Price* v. *Industrial Acc. Com.*, 9 Cal.App.2d 213 (49 P.2d 294)] the denial of compensation by the commission was set aside on the theory that in spite of certain symptoms which the claimant previously knew that he had, it was held to be error on the part of the commission to assume that the claimant should have known the cause or the nature of his ailment prior to the termination of his employment. The same rule should also apply with respect to knowledge on the part of a claimant as to the *extent* of his ailment.

". . . The commission found that the compensable disability occurred February 16, 1936. In the absence of evidence to the contrary, or even where there is a conflict of evidence upon that subject, in support of the finding of the commission we must assume that the claimant had no knowledge of the nature or seriousness of his ailment prior to the time that he felt that it was necessary for him to abandon his work. Certainly the record contains no evidence that he knew, or by the exercise of due diligence that he should have known, prior to the time when he left his employment in the mine on February 16, 1936, that he was suffering from a compensable disability."

The rule to be drawn from the decisions is that to start

the statute of limitations running in the case of a claimant suffering from an occupational disease at least three conditions must concur: 1. The disease must have so far progressed as to disable the claimant from the performance of his duties to such extent that he is entitled to compensation under the workmen's compensation law; 2. the claimant must know or in the exercise of ordinary care should have discovered that he is suffering from the occupational disease; and 3. he must likewise know or should in the exercise of such care have discovered that he is suffering a compensable disability of which the occupational disease is the cause.

An examination of the record satisfies us that there is no substantial evidence in this case of the existence of the first or third conditions above listed.

The record amply supports the finding that in 1940 the claimant was informed by Drs. Grimmer and Trimble that he was afflicted with silicosis. In 1940 Dr. Trimble made a written report of his findings to Dr. Grimmer. We quote from that report:

"While he has a definite silicosis at the present time, it is unlikely that disability will be present in the future from his silicosis. This will, of course, be slowly progressive because of his age, but it is unlikely that he will survive the age where his silicosis reaches the point of disability. . . .

"With regard to the industrial standpoint, this is an industrial problem, but in my opinion is entitled to no compensation at the present time. The Commission has ruled that the compensation depends (in silicosis) not upon its presence alone, but upon disability arising from the silicosis, or from some other cause in which the silicosis is an important complicating factor.

"To protect his right in the matter, I would suggest, in view of the Statute of Limitations, that his present condition be reported to the Commission. If by chance disability does, in the future, arise from his silicosis, his interests will then be protected."

A later report by Dr. Trimble dated February 1, 1943, was also introduced before the commission. It states:

"This man was referred to me by Dr. Grimmer, July 23, 1940, and was examined at that time.

"A diagnosis of silicosis without disability was made. Mr. Williams and his physician were both informed of the facts."

Following Dr. Trimble's suggestion, above quoted from his

1940 report, Dr. Grimmer filed a report with the Industrial Accident Commission stating that claimant had ''Silicosis of both lungs.'' This report contains the following statement: ''Date disability began. Not as yet.''

Lester R. Burdick, safety engineer of respondent Graham Manufacturing Co., testified that when claimant came back after his hernia operation ''My recollection is that Mr. Williams asked for the watchman's job; that he felt he had moulded long enough and that he was too old to carry on.'' Nothing was said about silicosis.

A search of the record fails to disclose any evidence that in 1936 when he went to work as a watchman or in 1940 when he was informed that he had the disease the claimant's condition of silicosis had progressed to a point where it would disable him from working as a molder, or any evidence contradicting the findings of Drs. Trimble and Grimmer that in 1940 the claimant's silicosis had not progressed to the point where it had resulted in any disability. In 1936 he was 68 years old and in June, 1940, he was almost 72. At a time when most men have retired from physical labor and until he was over 74 years of age the claimant continued to work steadily as a watchman. There is nothing in the record to contradict the claimant's own statement in 1936, as testified by Mr. Burdick, ''that he felt that he had moulded long enough and that he was too old to carry on.''

Even if there were evidence that the claimant was so disabled by silicosis in 1940 as to impair his ability to work as a molder there is no evidence to support a finding that he knew or in the exercise of ordinary care should have known that fact. He was entitled to rely on the findings of the two physicians whom he consulted and who were of the opinion that no disability had resulted from his condition of silicosis.

These conclusions make it unnecessary to consider the argument made by petitioner that even though a workman is compelled to accept less remunerative work by reason of an occupational disease that fact does not start the running of the statute of limitations unless the impairment of earnings is of such a substantial character that a man of ordinary prudence would seek compensation. That is apparently still an open question in this state. (See *Bianco* v. *Industrial Acc. Com.*, (Cal.App.) [142 P.2d 73]) where this question was considered by the District Court of Appeal in a decision which is not controlling because on hearing of the same case in the

Supreme Court the decision went on a different ground. (*Bianco* v. *Industrial Acc. Com.*, 24 Cal.2d 584 [150 P.2d 806].)

The award is annulled with directions to the respondent commission to decide the application on its merits.

Nourse, P. J., and Goodell, J., concurred.