[Civ. Nos. 7621, 7622. Third Dist. May 27, 1949.]

PACIFIC EMPLOYERS INSURANCE COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and N. E. HUFFMAN, Respondents.

(Two Cases.)

W. N. Mullen for Petitioner.

T. Groezinger and Robert Ball for Respondents.

ADAMS, P. J.—Petitioner has filed separate petitions for the review of two awards made by respondent Industrial Accident Commission in favor of N. E. Huffman, said awards being based upon an alleged injury to Huffman's left shoulder on August 23, 1947, and a later injury to his hip and back incurred September 13, 1947, both sustained while he was

employed by the Winter King Packing Company, for which company petitioner was the insurance carrier.

The award made by the commission for the shoulder injury was for the costs of further medical treatment to cure and relieve the effects of such injury, and reimbursement for his self-procured medical expense to be determined upon the filing of itemized bills and the approval of same by the commission in the event the parties are unable to adjust same.

Regarding the hip and back injury the commission found that it had caused temporary total disability from September 13, 1947, through April 13, 1948, and indefinitely thereafter, entitling applicant to $30 per week exclusive of the waiting period of one week; that he might be in need of further medical treatment and was entitled to have same furnished, and also entitled to payment for self-procured medical expense upon filing of itemized bills, etc.

It is contended here, in the proceeding involving the shoulder injury, that there was no notice of injury as required by law, and that there is no evidence to support a finding that such injury was sustained or that any disability occurred as a result of any such injury.

Answering the first of these contentions respondent calls our attention to testimony of Huffman that after about two weeks' work lifting boxes of peaches weighing 65 to 90 pounds each, at a rate of one box every one and one-half minutes, and feeding them into a slicer, he developed pain in his left shoulder, and that he then notified his foreman that he was unable to continue such work because of his painful shoulder, and that he was then assigned to work operating a hand truck. This we think constituted sufficient notice of injury to afford his employer an opportunity to investigate the facts and furnish medical treatment if found necessary.

At any event failure to give notice is not a bar to recovery unless the employer is prejudiced by such failure, and there is no evidence in the record that Huffman's employer was prejudiced, though the burden was upon him to show prejudice if it existed. (Lab. Code, § 5403; *U. S. Fidelity & G. Co.* v. *Industrial Acc. Com.*, 84 Cal.App. 226, 230 [257 P. 895]; *Williams* v. *Industrial Acc. Com.*, 71 Cal.App.2d 136 [161 P.2d 979].)

As for the contention that there is no evidence to support the finding of injury to the shoulder and resulting disability, it is well established that courts are powerless to overturn the findings of the Industrial Accident Commission

where there is some competent evidence to sustain them; and that their awards are not subject to review except insofar as they may be made without any evidence to sustain them. (*Ethel D. Co.* v. *Industrial Acc. Com.*, 219 Cal. 699 [28 P.2d 919]; *County of Los Angeles* v. *Industrial Acc. Com.*, 14 Cal.App.2d 134, 137 [57 P.2d 1341]; *Phoenix Indemnity Co.* v. *Industrial Acc. Com.*, 31 Cal.2d 856, 859 [193 P.2d 745].)

While there is evidence which would support contrary conclusions in this case, we cannot say that there is no competent evidence, nor any inference reasonably deducible from evidence, to support the conclusions of the commission. While the opinions of the several doctors who examined Huffman are conflicting, Dr. Scheck, who was appointed by the commission to examine him, gave as his opinion: "I have no doubt that this man's complaints have an organic basis, and my diagnosis is peri-arthritis of the left shoulder caused by injury." He recommended that novocain injections into the left shoulder be given, that the patient be put on a reducing diet, and thus treated for at least eight weeks before a final evaluation of the case be made.

Huffman's own testimony showed that prior to his work feeding peaches into the slicer he had engaged in heavy construction work, but after his injuries the only work he had been able to do was one and one-half hours' thinning peaches, which required reaching up, and a short period picking berries; but that he was compelled to stop because of pain in his back, hip and arm.

From Dr. Scheck's report and oral testimony it is reasonable to infer that Huffman was predisposed to arthritis which condition was aggravated by the injuries sustained; but such aggravation of a preexisting condition does not relieve petitioner here. (*Colonial Ins Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 79, 83-84 [172 P.2d 884].)

Turning now to Huffman's claim for injuries to his back and hip, petitioner's principal contention is that if such injury did occur it did not cause disability beyond April 13, 1948, nor even after January 29, 1948, or November, 1947, since there was medical testimony that on those dates applicant was able to return to work. The accident which caused such injuries occurred on September 13, 1947, when Huffman slipped on the wet floor and fell while hauling peaches in a hand truck; and the finding of the commission was that his injury caused temporary total disability from that date through April 13, 1948, and indefinitely thereafter; and that

he might be in need of further medical treatment thereafter. He was taken by his employer to a hospital when the accident occurred, but was discharged on the 16th. After that time he was ordered to continue physiotherapy treatments. Subsequently he sought advice from Dr. Kempner who by X-ray examinations found a fracture of the transverse process of the first lumbar, with evidence of a severe lumbo sacro sprain; and this doctor reported on October 20, 1947, that accident was the cause of the condition, that Huffman was confined to a hospital and that he would require two or three months' further treatment. Subsequently Huffman was examined by two other doctors, who gave opinions that he was feigning or exaggerating his symptoms, and that he was able to return to work. However, Dr. Harbaugh, medical director for the commission, apparently was not satisfied with these reports and Dr. Scheck was appointed to examine the patient. This he did on April 13, 1948. He reported under date of April 22, 1948, that X-rays showed that there had been a fracture of the first lumbar, but that it had healed. He diagnosed the hip condition as peri-arthritis caused by injury, and recommended the giving of novocain injections behind the left trochanter; and that he be treated for at least eight weeks before a final evaluation of his case. On July 2, 1948, Dr. Scheck was called for cross-examination, at which time he attributed the pain then suffered by the patient in the back and hip to the fall which had aggravated a rheumatic predisposition of the soft tissues; but he did state that while the shoulder condition was quite persistent and might go on for months, he did not think that the hip pain would interfere in any way with Huffman's work.

Huffman, also testifying on July 2, 1948, stated, however, that he had tried to work but was unable to continue because of pain; that he had been taking "shots" and heat treatments; that the hip hurt at times as badly as it did the day he fell; that he could not bend over; that he had pain in his back if he bent over much, and that at times it awakened him in the night; that as soon as he started to work he was right back where he started; that he really wanted to work; that he wanted his health so he could go back to work and "do a man's work like I used to."

We cannot say that a contrary conclusion by the commission would not find support in the record, but, on the other hand, we cannot say that there is no evidence to sustain the conclusion which it reached. The testimony of Huffman

created a conflict with that of the medical authorities, which conflict the commission alone has power to resolve. Compare *Western Pac. R. R. Co.* v. *Industrial Acc. Com.*, 17 Cal.App.2d 119, 120 [61 P.2d 459]; *Employers' etc. Corp.* v. *Industrial Acc. Com.*, 42 Cal.App.2d 669, 670 [109 P.2d 716], both holding that the testimony of the injured party presented substantial evidence to support the finding of the commission though it conflicted with the opinions of physicians as to the length of the period of disability. (Also see 1 Campbell's Workmen's Compensation, p. 940.)

The awards in both cases are affirmed.

Peek, J., and Thompson, J., concurred.