[Civ. No. 20034.  Second Dist., Div. One.  Jan. 19, 1954.]

FIRESTONE TIRE AND RUBBER COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and GABRIEL FLORES MANCHA, Respondents.

Kearney, Scott & Clopton for Petitioner.

Everett A. Corten, T. Groezinger, Chas. F. Zimmerman and Gordon W. Winbigler for Respondents.

DRAPEAU, J.—In this case the employee testified that while he was rolling a bale of old automobile tires weighing 200 pounds, he stooped over and tried to lift the bale; that when he stooped over he felt a snapping or pulling sensation in his back. The employee's doctor diagnosed his trouble as a herniated disc, for which he operated.

The Industrial Accident Commission found that the employee suffered an industrial accident causing a ruptured intervertebral disc. In the hearings of the commission it developed that all of the employee's conduct and all of his statements after the accident pointed to a nonindustrial accident. He even went so far as to accept payments of compensation for his injury from a nonindustrial accident insurance plan, and the referee for the commission, who heard and observed the witnesses, found against the employee and so recommended to the commission.

One of the cogent reasons for the commission's reversal of the referee must have been the conduct of the employer's nurse. It is in testimony that she told the employee he would lose his job if this was an industrial accident. For an illiterate working man that sort of threat is about as bad as a threat of death.

Also, it is to be remembered, that we do not hold an illiterate, frightened employee to the same meticulous standards of conduct that we would expect from a trained medical or legal mind.

Finally, it is a well-known fact that subjective symptoms of a ruptured disc are very often thought by patients to be nothing more than a common sprain or twist of the muscles of the back.

The testimony is sufficient to support the findings and conclusions of the commission.

The petition for a writ of review is denied.

Doran, J., concurred.

WHITE, P. J.—I dissent.

It is true that in this case the employee testified that on September 8, 1951, he was engaged in rolling a bale of auto tires for debeading; that they weighed about 200 pounds;

that he stooped over and tried to lift them one way so as to swing them, on the ground, another way, to get them to roll, and that he felt a "snap" in his back, later characterized as a "pulling sensation" there, or, as still later described, a "weakness" in his back which he thought "was a little old pain." He continued to work for a week, but that the pain extended down his right leg and when he found his work was falling off about 25 per cent he quit and asked for a pass to the hospital (a plant dispensary), so as to get on the sick list. When applying for the hospital pass he was asked by his foreman whether it was "work injury," and the employee replied that it was not. He told no fellow employee that he had sustained an industrial accident. The employee never requested of his employer either medical or hospital service.

On September 26, 1951, he signed a claim for disability benefits under the California Unemployment Insurance Act. This claim contained the specific question, "Was this disability caused by your work?" to which he answered, "No."

In two statements to his union's group insurance company, he denied that his injury or disability arose out of or in the course of his employment. He collected $358 on the nonindustrial policy and in addition, on a like disability policy with a similar provision excluding benefits for injury for which the insured had a right to compensation under any workmen's compensation law, he collected $27 a week from September 14th to the following March 13th.

When the employee went to the Veterans Administration and was examined on September 25th and 29th, 1951, he was asked, "In your opinion, is this disability the result of 'occupation' either as an industrial accident or as an 'occupational disease'?" To this interrogatory he unequivocally answered, "No." Motion pictures were put in evidence showing the employee, within two weeks prior to the hearing before the commission, doing strenuous work, lifting and carrying heavy weights and pushing heavy doors.

In explanation of these admittedly false statements, the employee testified that his schooling did not go beyond the third grade, that his knowledge of English was meager and that he did not read some of the blank forms containing the foregoing interrogatories. Another explanation offered was that a nurse of the employer told him that the latter did not like him to have too many injuries and suggested that he seek employment elsewhere, but this does not explain away

his manifold statements to the Veterans Bureau, the union's insurance company and the California Unemployment Commission, that the claimed injury did not arise out of or in the course of his employment.

I am cognizant of the oft-quoted rule which forecloses an appellate tribunal from disturbing the conclusions and inferences arrived at by the duly constituted trier of facts upon conflicting evidence.

But it is axiomatic, as well, that an appellate court may set aside the findings of the trier of fact when there is no substantial or credible evidence in the record to support them, or where the evidence relied upon by the prevailing party is apparently so improbable or false as to be incredible, or where it so clearly and unquestionably preponderates against the decision rendered as to convince the reviewing court that its rendition was the result of sympathy or prejudice upon the part of the trier of fact.

It is no answer to say that, in the face of the foregoing acts, conduct and declarations of the employee, he nevertheless testified at the commission hearing that his injury was occasioned by and through his employment. As was said by the Supreme Court in the case of *Zibbell* v. *Southern Pac. Co.,* *160 Cal.* 237, 241, 242 [116 P. 513]: "It is a wild conceit that any court of justice is bound by the mere swearing; it is swearing credibly that is to conclude its judgment."

I am impressed that the case now engaging our attention does not present the usual and ordinary situation where credible and substantial evidence was in conflict, but on the contrary, tenders us a case where the evidence relied upon by the commission was so thoroughly impeached and discredited as to fall short of that quantum of verity, reasonableness and substantiality necessary to sustain a finding based upon it.

I would grant the petition for a writ of review.

A petition for a rehearing was denied February 9, 1954, and petitioner's application for a hearing by the Supreme Court was denied March 17, 1954.