RONALD FUKUDA, Claimant-Appellee, *v.* PEERLESS ROOFING COMPANY, LTD., Employer-Appellant, and HAWAIIAN INSURANCE & GUARANTY CO., LTD., Insurance Carrier-Appellant.

NO. 5290

JUNE 21, 1974

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR, JJ., and CIRCUIT JUDGE LUM IN PLACE OF LEVINSON, J., ABSENT FROM THE STATE

OPINION OF THE COURT BY MENOR, J.

The appellants, Peerless Roofing Company, Ltd., (hereinafter Peerless), and its insurance carrier, Hawaiian Insurance & Guaranty Co., Ltd., appeal from the decision of the State of Hawaii Labor and Industrial Relations Appeals Board in favor of the claimant, Ronald Fukuda, under the Workmen's Compensation Laws.

The claimant was employed by Peerless from March 10, 1969, until March 21, 1969, when his employment was terminated.

During the week of March 10, 1969, while attempting to lift one end of a large roll of astroturf weighing at least 200 pounds, the claimant fell flat on his buttocks under the weight of the roll. As a result of this fall the claimant injured his lower back. He experienced a certain stiffness in his back the remainder of the working day, although he stated that it was not particularly painful. Later, however, after he returned home, he began suffering a dull pain and stiffness which extended to his shoulders and legs. These symptoms persisted throughout the subsequent period of his employment, approximately two weeks. He did not mention the injury or the ensuing pain to his employer or to any of his fellow employees.

On April 29, 1969, with his pain becoming more pronounced, and at the insistence of his mother, the claimant consulted Dr. Gabriel Ma, an orthopedic surgeon. He explained to Dr. Ma that his back injury had resulted from his attempt to lift artificial grass while at work on March 10, 1969.[1] The doctor failed to report this as an industrial injury, however, because the claimant had informed him that "he (the claimant) was on his own."[2] The claimant saw Dr. Ma

---

[1] Dr. Ma's office apparently had been carrying the claimant's case on its books throughout, as one for an industrial injury. His account was changed to "personal" only after the employer had signified its intention to oppose the claimant's workmen's compensation claim.

[2] There was then no statutory requirement that a physician submit a report to either the claimant's former employer or to the director of labor and industrial relations. Such a report was required only upon request of the employer or the director. See HRS § 386-96. The statute was amended, effective May 19, 1969,

again on May 6; on May 12 a lumbar myelogram revealed a herniated disc. Surgery was performed on the claimant's back on May 14, 1969. On August 4, 1969, the claimant formally filed his claim for compensation and gave Peerless written notice of his injury.

I

The board's finding that the claimant suffered a compensable industrial injury is supported by substantial evidence and will not be disturbed. The appellants contend, however, that the claimant has not complied with the notice requirements of HRS § 386-81, which reads in part as follows:

Notice of injury; waiver. No proceedings for compensation under this chapter shall be maintained *unless written notice of the injury has been given to the employer as soon as practicable after the happening thereof.* The notice may be given by the injured employee or by some other person on his behalf. (Emphasis added)

The board concluded that "under the circumstances of this case a written notice to Employer three months after the manifestation of the injury . . . is not so unreasonably late as to require denial of a claim, particularly when Employer has not been prejudiced by the late notification."

It is unnecessary for us to decide whether, under the circumstances, written notice of the injury was given to the employer "as soon as practicable after the happening thereof,"[3] for the reason that HRS § 386-81 also provides:

Failure to give such notice shall not bar a claim under this chapter if . . .; (3) *for some satisfactory reason the notice could not be given and the employer has not been prejudiced by such failure.* (Emphasis added)

The record shows that the claimant did not become aware of the compensability of his back injury under the Workmen's

---

requiring the attending physician to make such reports regardless of whether or not they were requested. See HRS § 386-96 (Supp. 1973). The submission of such a report would constitute the giving of notice "by some other person on his [claimant's] behalf." HRS § 386-81.

[3] *See* Highway Super Market v. Matsuo, 50 Haw. 519, 445 P.2d 34 (1968); Demond v. Univ. of Hawaii, 54 Haw. 98, 503 P.2d 434 (1972); In re Palama, 34 Haw. 65 (1937).

Compensation Laws until late July, 1969, when he applied for unemployment compensation, and was for the first time apprised of the fact that he might be eligible for workmen's compensation benefits. Having been made aware of his rights, the board found that he acted diligently in pursuing his remedy under the statute.

Unlike the claimant in *Highway Super Market v. Matsuo*, 50 Haw. 519, 445 P.2d 34 (1968), who failed to file her claim until eight months after her initial injury because she had been misled as to the work-related nature of her injury by earlier medical advice, the claimant in this action pleads as an excuse his mistaken belief that Peerless was no longer concerned with his injury after it had terminated his employment with the company. Essentially, Mr. Fukuda was ignorant of his rights under the Workmen's Compensation Laws. In addition, the claimant admitted to an initial fear of losing his position with Peerless if he should complain to them of his back ailment.[4]

Neither ignorance of the law, nor the fear of losing one's job, is sufficient reason in and of itself to excuse the notice requirements of HRS § 386-81. However, either or both, under the circumstances, may constitute a "satisfactory reason" within the meaning of the statute to excuse late notice, where the employer has not been prejudiced thereby. *Reed v. Township of Monticello*, 164 Minn. 358, 362, 205 N.W. 258, 259 (1925); *see Firestone Tire and Rubber Co. v. Industrial Accident Comm'n*, 122 Cal.App.2d 627, 265 P.2d 147 (1954). And once the claimant has demonstrated a "satisfactory reason" to explain his conduct, the onus then shifts to the employer to show that the claimant's failure to give him

---

[4] The appellants contend that following the termination of the claimant's employment with Peerless, approximately ten days later, there was then no reason for him to conceal the fact of his injury. This might be a valid argument on the question of whether or not Mr. Fukuda's subsequent complaints were work-connected, and it was thus argued on that point before the board. But on the question of notice this would be compelling evidence to substantiate the claimant's contention that he knew close to nothing about workmen's compensation. Further, when he first visited Dr. Ma, he advised the doctor that his back injury was caused by lifting artificial grass at work on March 10, 1969. Yet, when he was asked whether this was a workmen's compensation case or a private matter, he did not know what to say, stating only that he was "on his own."

prompt notice of the injury resulted in his prejudice. *Cf. Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, 92 Cal.App.2d 124, 206 P.2d 372 (1949).

The appellants argue that they were seriously prejudiced by the claimant's failure to file with the company prompt notice of his injury. Specifically, the appellants charge that the delay prevented Peerless from providing the claimant with immediate medical attention so as to prevent aggravation of his injury, hampered their investigation of the circumstances surrounding the injury, and frustrated the employer's accident prevention program.

Peerless was not prejudiced by its inability to provide the claimant with immediate medical attention. The evidence is clear that when the claimant could no longer work due to his back pain he sought and received medical care. There is nothing to show that the employer would have supplied different or better medical treatment. No competent evidence was offered to show that the claimant's condition was aggravated by his delay in seeking medical assistance.

Secondly, nowhere in the record have the appellants demonstrated that their investigation was hampered by the claimant's failure to give them timely notice of his injury. Foreman Iwasaki, the only witness to the accident other than the claimant himself, testified at the board hearing. Dr. Ma, the physician, who conducted the initial medical examination of the claimant, and who performed the ensuing surgery and supervised the post-operative care, was present and testified. All of the relevant records were presented for the board's consideration. Moreover, the president of Peerless and the owner of the site at which the injury occurred also testified. There is no proof that relevant evidence was lost or destroyed, or that the memories of witnesses were clouded by the passage of time. There is no basis for finding that the claimant's delay in giving notice of his injury prejudiced the appellants' investigative efforts. *Accord, Cutno v. Neeb Kearney & Co.*, 237 La. 828, 112 So.2d 628 (1959) (employer not prejudiced by failure to receive notice of claimant's injury until 11 months after it occurred).

Finally, the appellants' claim that failure to notify them of

the injury resulted in the frustration of the employer's accident prevention program is totally unsupported by the record.

## II

There was also evidence before the board from which it could have reasonably inferred that foreman Iwasaki knew or should have known of the injury.[5] In this connection, HRS § 386-81 further provides:

Failure to give such notice shall not bar a claim under this chapter if (1) *the employer or his agent in charge of the work in the place where the injury was sustained had knowledge of the injury*. (Emphasis added)

According to the facts as found by the board, the claimant was assisting Iwasaki in moving a roll of astroturf which was approximately 15 feet long and two feet in diameter, and weighed at least 200 pounds. Iwasaki was at one end, the claimant at the other. After a great deal of effort, the claimant finally managed to place his end of the roll upon his shoulder, only to have his legs buckle from under him, causing him to fall flat on his buttocks. Iwasaki was a witness to the claimant's exertions and subsequent collapse, yet he made no attempt to ascertain whether or not the claimant was injured. He merely instructed the claimant to try again. The board found that the claimant sustained his injury as a result of this incident, and this finding is amply supported by the evidence.

The jarring contact of the claimant's spine with a hard surface, occasioned by his fall while holding the end of a roll of astroturf weighing at least 200 pounds, should have put a reasonable man in Iwasaki's position on notice that an injury might have occurred and that such a work-related injury was possibly, if not probably compensable. Additionally, the claimant's inability to bend throughout the ensuing week in the presence of foreman Iwasaki ought to have prompted

---

[5] *See* Abdul v. American Factors, 32 Haw. 503 (1932); Jewel v. Jones, 189 Okla. 290, 116 P.2d 698 (1941); Fogg v. Woodcock Lunch, 125 Me. 524, 134 A. 626 (1926).

further investigation on the part of the employer or his agents. *See Bollerer v. Ellenberger,* 50 N.J. 428, 236 A.2d 138 (1967).

### III

In reviewing the record of this case, against a background of statutory presumptions,[6] and guided by the clear intendment of the Workmen's Compensation Laws,[7] we cannot say as a matter of law that the decision of the board was clearly erroneous. HRS § 386-88 (Supp. 1973).

Affirmed.

*Wilbur K. Watkins, Jr.* for Appellants.

*Harry Tamura* for Claimant-Appellee.

---

[6] HRS § 386-85 provides as follows:

Presumptions. In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

(1)     That the claim is for a covered work injury;

(2)     That sufficient notice of such injury has been given;

(3)     That the injury was not caused by the intoxication of the injured employee; and

(4)     That the injury was not caused by the wilful intention of the injured employe to injure himself or another.

*See also* S & W Crane Service, Inc. v. Berard's Dependents, 53 Haw. 161, 489 P.2d 419 (1971); Acous., Insul'n & Drywall, Inc. v. Lab. Bd., 51 Haw. 312, 459 P.2d 541 (1969).

[7] As this court advised in In re Palama, 34 Haw. 65, 67 (1937): "The great purpose of the Act in so far as it related to the type of injury we are now considering is to provide means for compensating the employee for pecuniary loss arising out of his disability to work, and to accomplish that purpose the statute should receive a liberal construction." *See also* Evanson v. Univ. of Hawaii, 52 Haw. 595, 600, 483 P.2d 187, 191 (1971) and cases therein cited.