[No. B207660. Second Dist., Div. Four. Apr. 30, 2009.]

DON BONTEMPO, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and the CITY OF
ALHAMBRA, Respondents.

692

COUNSEL

Lewis, Marenstein, Wicke & Sherwin, Gold D. Lee and Allison E. Barrett for Petitioner.

Kegel, Tobin & Truce and Steven M. Green for Respondent City of Alhambra.

Neil P. Sullivan and Vincent Bausano for Respondent Workers' Compensation Appeals Board.

OPINION

**MANELLA, J.**—This case turns on the effect of an amendment to the statutes that govern the permanent disability component of workers' compensation. Labor Code section 4658 contains several formulas for determining the number of weeks an injured worker will receive permanent disability benefits.[1] In 2004, subdivision (d) was added to section 4658, creating a new formula that applies to injuries occurring on or after January 1, 2005.[2] Included within subdivision (d) are two provisions—subdivision (d)(2) and (3)—that apply to employers of 50 or more persons: subdivision (d)(2) requires permanent disability benefits to be increased by 15 percent if the employer does not offer the injured employee regular work, modified work or alternative work within 60 days of the disability becoming permanent and stationary; subdivision (d)(3) requires permanent disability benefits to be decreased by 15 percent if the employer does offer the injured employee regular work, modified work or alternative work.[3] The parties here, petitioner

---

[1] Statutory references are to the Labor Code.

[2] The provision was added on April 19, 2004, as part of Senate Bill No. 899 (2003–2004 Reg. Sess.), a comprehensive reform of the workers' compensation system. (See *Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1323 [57 Cal.Rptr.3d 644, 156 P.3d 1100]; *Zenith Ins. Co. v. Workers' Comp. Appeals Bd.* (2007) 153 Cal.App.4th 461, 464 [62 Cal.Rptr.3d 683].) The bill was "an urgency measure 'designed to alleviate a perceived crisis in skyrocketing workers' compensation costs.' " (*Genlyte Group, LLC v. Workers' Comp. Appeals Bd.* (2008) 158 Cal.App.4th 705, 715 [69 Cal.Rptr.3d 903].)

[3] Section 4658, subdivision (d)(2) provides: "If, within 60 days of a disability becoming permanent and stationary, an employer does not offer the injured employee regular work, modified work,

Don Bontempo and his employer, respondent City of Alhambra (City), stipulated that Bontempo's employment-related pulmonary condition was permanent and stationary and that he was being paid $253 in weekly benefits, an amount that included the additional 15 percent prescribed by section 4658, subdivision (d)(2). They asked the workers' compensation judge (WCJ) to resolve the issues of "permanent disability" and "apportionment." Using the formula in section 4658, subdivision (d)(1), the WCJ awarded Bontempo an amount for the percentage disability he suffered, but did not apply section 4658, subdivision (d)(2), or consider whether it applied.

In a petition for reconsideration submitted to the Workers' Compensation Appeals Board (the Board), Bontempo contended that section 4658, subdivision (d)(2), was at issue before the WCJ, that the evidence presented supported awarding the additional 15 percent required by the provision, and that the WCJ erred in failing to include that amount in the award. The Board denied the petition for reconsideration on the ground that Bontempo had not "raise[d] any issue with respect to increased permanent disability indemnity pursuant to Labor Code section 4658 at trial or in any Pre-Trial Conference Statement prior to trial." Bontempo filed a petition seeking review. We granted review and now conclude that the WCJ erred in failing to apply section 4658, subdivision (d)(2), on the record presented, and that the Board erred in concluding the issue of section 4658, subdivision (d)(2), had not been raised.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Orthopedic Claim*

Bontempo was employed as a street maintenance worker for the City. On March 28, 2003, he sustained an injury to his right knee after falling off a

---

or alternative work, in the form and manner prescribed by the administrative director, for a period of at least 12 months, each disability payment remaining to be paid to the injured employee from the date of the end of the 60-day period shall be . . . increased by 15 percent."

Section 4658, subdivision (d)(3) provides: "(A) If, within 60 days of a disability becoming permanent and stationary, an employer offers the injured employee regular work, modified work, or alternative work, in the form and manner prescribed by the administrative director, for a period of at least 12 months, and regardless of whether the injured employee accepts or rejects the offer, each disability payment remaining to be paid to the injured employee from the date the offer was made shall be . . . decreased by 15 percent. [¶] (B) If the regular work, modified work, or alternative work is terminated by the employer before the end of the period for which disability payments are due the injured employee, the amount of each of the remaining disability payments shall be . . . increased by 15 percent. An employee who voluntarily terminates employment shall not be eligible for payment under this subparagraph. This paragraph shall not apply to an employer that employs fewer than 50 employees."

City maintenance truck. On April 14, 2003, Bontempo filed an application for adjudication of claim with the Board, based on the knee injury (claim No. VNO 0471122). The application alleged that the injury caused continuous disability from March 29, 2003. In December 2004, Bontempo obtained a report from a physician, Daniel Kharrazi, M.D., indicating he had reached permanent and stationary status in November, and the matter was set for a hearing.[4] The hearing was taken off calendar when the parties decided to have Bontempo seen by an agreed-upon medical examiner, Mason Hohl, M.D., who examined and interviewed Bontempo and issued a report in November 2005.[5]

## B. *Pulmonary Claim*

On October 27, 2005, before claim No. VNO 0471122 could be resolved, Bontempo filed a second application for adjudication of claim with the Board (claim No. VNO 0520494). This application was based on pulmonary injury and alleged that such injury occurred between 1998 and October 24, 2005. The two claims were consolidated.

## C. *Relevant Medical Reports*

### 1. *Pulmonary Report*

In February 2006, Jonathan C. Green, M.D., conducted an agreed-upon medical examination and reported on Bontempo's pulmonary condition. After examining and interviewing Bontempo and reviewing his medical records, Dr. Green concluded that his pulmonary condition was permanent and stationary and had resulted in a 25 percent impairment. He estimated that 80

---

[4] " 'Permanent and stationary status' is the point when the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment." (Cal. Code Regs., tit. 8, § 9785(8).)

Dr. Kharrazi attributed all of Bontempo's disability to the March 2003 incident. His report stated among other things that Bontempo, who had been off work since the incident, was capable of returning to his usual and customary occupation with certain restrictions: no very heavy lifting; no repetitive bending, kneeling or squatting; and no prolonged standing or walking.

[5] Dr. Hohl stated that the disability resulting from Bontempo's knee should be apportioned 50 percent to a preexisting condition and 50 percent to the March 2003 incident. He also noted that Bontempo was partially disabled as the result of back problems, and he apportioned 15 percent of this disability to the March 2003 incident. Dr. Hohl "concur[red] with [Dr. Kharrazi's] opinion" that Bontempo's condition "reached maximal medical improvement in November 2004." The report indicated that Bontempo had returned to his regular occupation in street maintenance, after being off work for approximately one year.

percent of Bontempo's pulmonary impairment was related to industrial exposure.

Dr. Green's report stated that Bontempo was incapable of returning to his usual and customary occupation due to potential "exposure to asphalt, cement, and other similar environmental substances which in the working environment would lead to irritation to the lung." The report also stated that Bontempo had been off work since August 31, 2005, "as apparently his employer did not have a position for him" and "there was no restricted duty available."

## 2. Orthopedic Report

In January 2007, Gerald M. Paul, M.D., conducted an agreed-upon medical examination and reported on Bontempo's orthopedic condition. Dr. Paul noted that Bontempo had been declared permanent and stationary by Dr. Kharrazi in late 2004 and that Dr. Hohl in his November 2005 report had concurred with Dr. Kharrazi. Dr. Paul agreed that Bontempo was permanent and stationary. He did not specify the date when that condition was reached, but noted that Bontempo had become permanent and stationary "under the old system" and, therefore, need not be evaluated under the newer AMA guidelines.[6]

Dr. Paul's report stated that Bontempo was not capable of resuming his usual and customary occupational demands, as he was subject to work restrictions precluding heavy lifting, prolonged weightbearing, climbing, walking over irregular terrain, squatting, kneeling, crouching, crawling and pivoting. Dr. Paul noted that Bontempo had been off work since mid-2005.

---

[6] As part of the 2004 comprehensive revisions, the Legislature amended section 4660 to require a new rating schedule incorporating the American Medical Association (AMA) guidelines for the evaluation of permanent disability. (*Genlyte Group, LLC v. Workers' Comp. Appeals Bd., supra,* 158 Cal.App.4th at p. 715.) The new rating schedule went into effect January 1, 2005. (Cal. Code Regs., tit. 8, § 9805; *Genlyte Group, LLC v. Workers' Comp. Appeals Bd., supra,* at p. 715; *Vera v. Workers' Comp. Appeals Bd.* (2007) 154 Cal.App.4th 996, 1004 [65 Cal.Rptr.3d 151].)

A "rating" is the amount of permanent disability suffered by the injured worker attributable to the claim under consideration, expressed as a percentage. (See 1 Hanna, Cal. Law of Employee Injuries and Workers' Comp. (2d rev. ed. 2008) Permanent Disability, § 8.02, p. 8-5; *Brodie v. Workers' Comp. Appeals Bd., supra,* 40 Cal.4th at pp. 1320–1321, fn. omitted ["Permanent disability payments are calculated by first expressing the degree of permanent disability as a percentage and then converting that percentage into an award based on a table. (§ 4658.) . . . [¶] Employers must compensate injured workers only for that portion of their permanent disability attributable to a current industrial injury, not for that portion attributable to previous injuries or to nonindustrial factors."].)

### D. Pretrial Conference Statements

Prior to the scheduled hearing dates, the parties filed joint pretrial conference statements.[7] In the 2005 pretrial conference statement for claim No. VNO 0471122 (the orthopedic claim), the parties stipulated that Bontempo's knee injury arose out of and in the course of his employment and that at the time of the injury, his earnings were $814.12 per week, warranting an indemnity rate of $542.75 per week for temporary disability and $185 per week for permanent disability. The parties further stipulated that the City had already paid (1) temporary disability at the rate of $542.75 during various periods (from Mar. 29–Sept. 24, 2003, from Sept. 30–Nov. 30, 2003, and from Apr. 24–Aug. 8, 2004); and (2) permanent disability at the rate of $185 from December 1, 2003, through April 20, 2004, and continuously from August 9, 2004. The pretrial conference statement form contained boxes for indicating the issues to be addressed by the WCJ. The parties checked the boxes labeled "permanent disability," "apportionment," "need for further medical treatment," "liability for self-procured medical treatment," "liens" and "attorney fees."[8]

In the 2007 updated pretrial conference statement for the orthopedic claim, the parties reiterated the above stipulations with respect to the date of the injury, the injury's relationship to Bontempo's employment, Bontempo's earnings at the time of the injury, the indemnity rates for temporary and permanent disability, and the amounts paid by the City. The 2007 statement contained more recent information concerning the City's payments to Bontempo, clarifying that permanent disability had been paid at the rate of $185 per week from August 9, 2004, through December 1, 2005, and continuing from January 19, 2007. With respect to issues to be addressed at the hearing, the parties checked the same boxes as before and in addition, checked boxes on the form indicating that there was a dispute over temporary disability and the permanent and stationary date.[9]

---

[7] The first pretrial conference statement for claim No. VNO 0471122 was filed in 2005, when the claim was originally set for hearing.

[8] The box labeled "other issues" was also checked, but the issues concerned the admissibility of evidence. The issue box for "permanent and stationary date" was not checked; however, the form stated that the employee claimed a permanent and stationary date of November 15, 2004 for the orthopedic injury. The remaining boxes on the form—labeled "employment," "insurance coverage," "injury arising out of and in the course of employment," "parts of body injured," "earnings" and "temporary disability"—were not checked.

[9] According to information written on the form, Bontempo claimed a permanent and stationary date of January 11, 2007, and temporary disability for the period from March 28, 2003, through January 11, 2007.

In the pretrial conference statement for claim No. VNO 0520494 (the pulmonary claim), the parties stipulated that Bontempo suffered injury to his respiratory system during the period from 1998 to October 24, 2005, the injury arose out of and in the course of his employment with the City, and at the time of the injury, Bontempo's earnings were $910.68 per week, warranting an indemnity rate of $607.12 per week for temporary disability and $220 per week for permanent disability. The parties further stipulated that the City had paid (1) temporary disability in the amount of $607.12 per week from September 8 to September 12, 2005 and from September 20, 2005 to February 23, 2006; and (2) permanent disability in the amount of $253.00 per week continuously from February 24, 2006. To indicate pending issues, the parties checked the boxes for "permanent disability," "apportionment," "need for further medical treatment," "liability for self-procured medical treatment," "liens," and "attorney fees."[10]

E. *Stipulations*

On the day of the hearing, November 7, 2007, the parties entered into an additional set of stipulations for each claim on the record. For claim No. VNO 0471122, the parties stipulated that on March 28, 2003, Bontempo, while employed by the City, "sustained industrial injury to his right knee." It was further stipulated that at the time of the admitted injury, Bontempo's earnings were $814.12 per week, "justifying permanent disability indemnity at the rate of $185.00 per week."

For claim No. VNO 0520494, the parties stipulated that from January 1, 1998, to October 24, 2005, Bontempo, while employed by the City, "sustained industrial injury to his respiratory system." It was further stipulated that at the time of the admitted injury, Bontempo's earnings were $910.68 per week, "justifying permanent disability indemnity at the rate of $220 per week."

In the on-the-record stipulations for both claims, the parties agreed that "any permanent disability ratings as may be obtained with respect to the claim of injury to the pulmonary system are ratable according to the post-January 1, 2005 schedule" and that the right knee would be ratable based on the schedule that existed prior to January 1, 2005.

The parties stated that the following issues were contested: (1) the "[n]ature and extent of permanent disability"; (2) the "[n]eed for further

---

[10] The box to indicate "other issues" was also checked. The issue identified—"need for treatment of the fungal condition on an industrial basis"—is not raised here.

medical care"; (3) the "[l]iability for reimbursement of medical care costs"; (4) the medical lien claims; and (5) attorney fees.

F. *Evidence*

Neither side presented any oral testimony. The medical reports of Dr. Paul and Dr. Green were entered into evidence. On the hearing record, Bontempo's counsel made an offer of proof that if Bontempo were to testify, "he would testify in substantial accord with the histories recited in the medical reports of Dr. Jonathan Green and Dr. Gerald Paul." The offer was accepted.

After receiving the evidence, the WCJ submitted separate requests to the Disability Evaluation Unit (DEU) of the Division of Workers' Compensation to rate the two claims using the following instructions: (1) for the knee injury, a compensation rate of $185 and applicability of the 1997 schedule; and (2) for the pulmonary injury, a compensation rate of $220, a 20 percent apportionment to nonindustrial factors (per Dr. Green's report) and applicability of the January 1, 2005 schedule.[11] The DEU rater returned the following ratings: (1) 50 percent for the knee injury, entitling Bontempo to 266.25 weeks of permanent disability payments, which at the rate of $185 per week totaled $49,256.25; and (2) 37 percent for the pulmonary injury, entitling Bontempo to 180 weeks of permanent disability payments, which at the rate of $220 per week totaled $39,600 for the pulmonary injury.

G. *WCJ's Decision*

The WCJ made the following findings: (1) while employed by the City, Bontempo sustained injury to his right knee on March 28, 2003, and sustained injury to his respiratory system during the period from January 1, 1998, to October 24, 2005; (2) the knee injury caused permanent orthopedic disability of 50 percent, equivalent to 266.25 benefit weeks, payable at the rate of $185 per week; (3) the respiratory injury caused permanent pulmonary system disability of 37 percent after apportionment, equivalent to 180 benefit weeks, payable at the rate of $220 per week.

Based on these findings, the hearing officer awarded Bontempo $49,256.25 for the orthopedic claim (266.25 times $185) and $39,600 for the pulmonary claim (180 times $220).[12] The award for the pulmonary claim was based on the schedule or formula in section 4658, subdivision (d), but the WCJ did not

---

[11] At the request of the parties or the WCJ, the DEU evaluates medical reports to determine permanent disability ratings based on guidelines promulgated under section 4660. (See Cal. Code Regs., tit. 8, §§ 10150, 10156, 10160, 10166–10167.)

[12] Attorney fees were deducted from these sums.

apply or consider the 15 percent adjustment in section 4658, subdivision (d)(2) and (3).

## H. *Request for Reconsideration*

On January 18, 2008, Bontempo submitted a petition for reconsideration. He contended that his pulmonary injuries were the result of cumulative trauma ending on October 24, 2005, and that after the condition had reached maximum medical improvement as reflected in Dr. Green's February 2006 report, the City did not offer regular, modified or alternative work. Accordingly, he claimed entitlement under section 4658, subdivision (d)(2), to an additional 15 percent on the pulmonary claim, which he calculated would result in a permanent disability award of $45,540 (180 times $253 or $39,600 times 1.15) for that claim. He did not claim entitlement to a similar adjustment for the orthopedic claim.

The City opposed, contending that section 4658, subdivision (d)(2), had not been raised as an issue in either the pretrial conference statements or on the record at the hearing. The City further contended that no evidence had been submitted which would have permitted the WCJ to resolve a section 4658, subdivision (d)(2) issue, even had it been properly raised.

The Board issued an opinion and order denying the petition for reconsideration. In its opinion, the Board stated that Bontempo raised "the Labor Code section 4658 issue . . . for the first time on reconsideration" and "did not raise any issue with respect to increased permanent disability indemnity pursuant to Labor Code section 4658 at trial or in any Pre-Trial Conference Statement prior to trial." Accordingly, Bontempo had "not preserved this issue for reconsideration."

## I. *Petition for Writ of Review*

Bontempo filed a petition for writ of review contending that the Board acted in excess of its powers, the evidence did not justify the WCJ's findings of fact, and the findings of fact did not support the order because the WCJ failed to apply the section 4658, subdivision (d)(2), 15 percent increase to both the award for the pulmonary injury and the award for the orthopedic injury. The City responded, conceding it had determined in 2006 that there was no modified or alternate work available for Bontempo and that it had augmented by 15 percent each payment made to him thereafter (as stipulated in the parties' pretrial conference statement for claim No. VNO 0520494). However, the City contended that nothing in the record before the WCJ

established whether Bontempo returned to work or was offered alternate modified employment and that, therefore, the petition should be denied.

We sent a letter asking the parties and the Board to address whether "the provisions of Labor Code section 4658, subdivision (d)(2) and (d)(3) [are] mandatory by operation of law, thus requiring the 15 percent increase or decrease in permanent disability indemnity to be addressed and/or awarded in the Opinion on Decision and Findings and Award." The Board responded with a letter stating that "if all the criteria in . . . either section 4658 (d)(2) or (d)(3) have been met, the corresponding 15 percent increase or decrease must be applied, i.e., it is mandatory. However, . . . it will not necessarily be apparent from the record whether sections 4658(d)(2) or 4658(d)(3) should apply." The Board contended the record did not contain sufficient evidence to permit determination of whether to apply the provisions.

## DISCUSSION

### A. *Purpose of Permanent Disability Benefits*

■ "California's workers' compensation system was established to provide for the health, safety, and welfare of workers in the event of industrial injury." (*Brodie v. Workers' Comp. Appeals Bd., supra,* 40 Cal.4th at p. 1320.) The system provides a variety of benefits to the injured employee, including permanent disability benefits. As explained in *Gamble v. Workers' Comp. Appeals Bd.* (2006) 143 Cal.App.4th 71 [49 Cal.Rptr.3d 36], temporary disability benefits are provided to assist the injured worker "during the period he or she is healing" and "workers . . . will receive temporary disability until they recover or become permanently disabled. [Citations.]" (*Id.* at pp. 79–80.) Thereafter, " '[o]nce the employee's condition has become permanent and stationary, he or she is entitled to permanent disability indemnity; these benefits are intended as reimbursement for the employee's impaired future earning capacity or decreased ability to compete in the open labor market.' " (*Id.* at p. 80, quoting *Ritchie v. Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1179–1180 [29 Cal.Rptr.2d 722].)

### B. *Section 4658, Subdivision (d)(2), and the Pulmonary Claim*

When Bontempo sought reconsideration of the pulmonary claim, the City contended that his petition should be denied because he failed to affirmatively raise section 4658, subdivision (d)(2), as an issue before the WCJ and failed to present sufficient evidence to support a claim for additional benefits under section 4658, subdivision (d)(2). Denying Bontempo's petition for reconsid-

eration, the Board agreed with both contentions. Our review convinces us that neither is correct.

1. *The Evidence Supported That Bontempo Was Entitled to the Additional 15 Percent Awardable Under Section 4658, Subdivision (d)(2).*

In the pretrial conference statement for the pulmonary claim, the parties stipulated that as Bontempo's earnings at the time of injury were $910.68 per week, he was entitled to permanent disability benefits at the highest regular weekly rate applicable to injuries occurring in 2005—$220—and that beginning in February 2006 (the date of Dr. Green's medical report declaring the pulmonary injury permanent and stationary), the City paid him at that rate plus 15 percent, i.e., $253.[13] The City had no reason to pay that amount unless section 4658, subdivision (d) applied and the City recognized that it had no modified or alternative work available for Bontempo, even after his pulmonary injury became permanent and stationary.[14]

Moreover, at the hearing, the City accepted Bontempo's offer of proof that if he were called to testify, he would testify in accord with the histories recited in the medical reports of Dr. Green and Dr. Paul. Both reports stated that Bontempo had been off work since mid-2005, and Dr. Green's report specifically stated that Bontempo's employer "did not have a position for him" and that "there was no restricted duty available."

As to whether the City employed 50 or more persons, at no time has the City seriously contested this point, and its stipulation that it began paying Bontempo the additional 15 percent after the pulmonary injury was declared

---

[13] Section 4650 requires the employer to commence paying permanent disability benefits within 14 days after the date of the last payment of temporary disability benefits. The amount payable is dependent on the employee's average weekly earnings subject to a minimum and maximum which changes over the years. For injuries occurring in 2005, the maximum amount payable for partial permanent disability, not including the additional 15 percent allowed by section 4658, subdivision (d)(2), was $220. (1 Hanna, *supra,* § 8.08[1], p. 8-54.19; 3 Hanna, *supra,* Table 17A, p. AppE-61; see § 4453.)

[14] The Board suggests in its letter that the determination whether to offer Bontempo regular, modified or alternate employment had to await Dr. Paul's 2007 report on his orthopedic condition, "as [Bontempo] was not yet permanent and stationary and still unable to work with respect to his knee injury." The record refutes that suggestion. Dr. Kharrazi and Dr. Hohl both agreed that Bontempo's knee injury became permanent and stationary in late 2004. Dr. Paul's report did not establish a later date. He agreed that Bontempo became permanent and stationary prior to January 1, 2005, the effective date of the revised rating schedule utilizing the AMA guidelines.

permanent and stationary represented at least a tacit admission that the City employed the number required to trigger application of section 4658, subdivision (d)(2), to the pulmonary claim.

> 2. *By Checking the Boxes on the Pretrial Conference Form Labeled "Permanent Disability" and "Apportionment" the Parties Conveyed Their Intention That the WCJ Accurately Calculate the Award for Permanent Disability Benefits Under the Applicable Formula and the Facts Presented, Including Section 4658, Subdivision (d)(2).*

In opposing Bontempo's petition for reconsideration, the City relied on section 5502, subdivision (e)(3), which provides that if claims are not resolved at the mandatory settlement conference, "the parties shall file a pretrial conference statement noting the specific issues in dispute . . . ." In denying the petition for reconsideration, the Board relied on Bontempo's alleged failure to "raise any issue with respect to increased permanent disability indemnity pursuant to Labor Code section 4658 . . . in any Pre-Trial Conference Statement prior to trial." The City and the Board contend that because section 4658, subdivision (d)(2), was not specifically mentioned in the parties' pretrial conference statement or in their stipulated issues, the WCJ was not required to address it.

Preliminarily, we note that the City began paying Bontempo the additional 15 percent required by section 4658, subdivision (d)(2) in February 2006, and in the pretrial conference statement for the pulmonary claim the City stipulated that it was continuing to do so. Accordingly, any failure on Bontempo's part to expressly raise section 4658, subdivision (d)(2), as a contested issue may fairly be attributed to the fact that the City's own conduct acknowledged his entitlement to that amount.

■ Moreover, even where an applicant inadequately describes his or her claim or omits reference to the correct claim, where undisputed evidence to support the correct claim is introduced into the record before the WCJ without objection, the WCJ should ordinarily award benefits in accordance with the evidence presented. In *Beckstead v. Workers' Comp. Appeals Bd.* (1997) 60 Cal.App.4th 787 [71 Cal.Rptr.2d 254], for example, the employee's application for benefits indicated his injury occurred on a specific date, but the medical evidence presented at trial supported continuing trauma only and the WCJ denied benefits on the ground that the evidence presented did not support the claim set forth in the application. The Court of Appeal acknowl-

edged that "[u]nder sections 5400 and 5401, a workers' compensation claim may not be maintained unless the employer is given notice in writing." (*Beckstead v. Workers' Comp. Appeals Bd., supra*, 60 Cal.App.4th at p. 790.) The court held, however, that " '[t]he failure to give notice under section 5400, or any defect or inaccuracy in a notice is not a bar to recovery under this division if it is found as a fact in the proceedings for the collection of the claim that the employer was not in fact misled or prejudiced by such failure.' (§ 5403.)" (*Beckstead v. Workers' Comp. Appeals Bd.*, at pp. 790–791, quoting *Pacific Emp. Ins. Co. v. Ind. Acc. Com.* (1949) 92 Cal.App.2d 124, 126 [206 P.2d 372].)

Similarly, in *Moyer v. Workmen's Comp. Appeals Bd.* (1972) 24 Cal.App.3d 650 [100 Cal.Rptr. 540], the WCJ and the Board denied an applicant's request for compensation for hearing loss because " '[t]here was no pleading . . . for a hearing loss.' " (*Moyer v. Workmen's Comp. Appeals Bd., supra*, 24 Cal.App.3d at p. 655.) The Court of Appeal reversed: "The evidence . . . conclusively establishe[d] a preexisting hearing loss ratable at 33 percent . . . [which] constitutes a preexisting permanent partial disability within the meaning of [the applicable Labor Code provision]. . . . [¶] Even in a civil case, when an issue has been consciously tried by the parties without objection, it is properly before the court for adjudication even though not formally raised by the pleadings. [Citations.] In a workmen's compensation proceeding, in which much less formal rules of pleading are observed, the rule should be at least as liberal. [Citation.] Although the preexisting hearing loss was not alleged in the application, when the parties appeared for hearing . . . , [a]pplicant was referred to an ear specialist by agreement of the parties, and the report of the doctor was subsequently received into evidence without objection. The hearing loss issue was, therefore, before the Board." (*Moyer v. Workmen's Comp. Appeals Bd., supra*, 24 Cal.App.3d at pp. 656–657; accord, *National Convenience Stores v. Workers' Comp. Appeals Bd.* (1981) 121 Cal.App.3d 420, 425 [175 Cal.Rptr. 378].)

■ Here, the undisputed evidence established that Bontempo had not worked after mid-2005 because the City had no modified or alternate work available. This evidence, combined with the stipulations of the parties that the City was paying the additional 15 percent prescribed by section 4658, subdivision (d)(2), was sufficient to put any question regarding the provision's applicability before the WCJ for adjudication and resolution in Bontempo's favor.

■ Finally, in resolving a dispute over an applicant's alleged failure to specify issues, the Board and the courts are to be mindful of the principle that the statutes governing workers' compensation, including the procedural provisions, are to be liberally construed in favor of protecting workers. (*City of Fresno v. Workers' Comp. Appeals Bd.* (1985) 163 Cal.App.3d 467, 471 [209 Cal.Rptr. 463]; § 3202 [workers' compensation statutes "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment"]; see § 5708 [in the conduct of hearings, the WCJ "shall not be bound by the common law or statutory rules of evidence and procedure, but may make inquiry in the manner, through oral testimony and records, which is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit and provisions of this division"]; *Galloway v. Workers' Comp. Appeals Bd.* (1998) 63 Cal.App.4th 880, 887 [74 Cal.Rptr.2d 374], quoting *Reynolds v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 726, 729 [117 Cal.Rptr. 79, 527 P.2d 631] ["The purpose of the rules and regulations [governing workers' compensation] . . . 'is to protect and preserve the rights of an injured employee who may be ignorant of the procedures or, indeed, the very existence of the workmen's compensation law.' . . . [Citation.]"].) Under this principle, we conclude that as the issues identified in the pretrial conference statement, together with the parties' stipulations, clearly alerted the WCJ that section 4658, subdivision (d), was at issue, there was no basis for failing to apply the entire formula contained in that provision, including subdivision (d)(2).

As we have seen, the pretrial conference statement form used for workers' compensation claims includes only a limited number of boxes to check to indicate unresolved issues. Here, the parties checked the boxes labeled "permanent disability" and "apportionment." There is no dispute that by checking those boxes, the parties communicated their desire that the WCJ: (1) rate Bontempo's permanent disabilities under the appropriate guidelines and (2) use the applicable section 4658 schedule or formula to calculate the final award.[15]

■ Section 4658 contains four formulas used to calculate the number of weeks permanent disability benefits are payable, which is dependent on the

---

[15] Apportionment is " 'the process employed by the Board to segregate the residuals of an industrial injury from those attributable to other industrial injuries, or to nonindustrial factors, in order to fairly allocate the legal responsibility.' [Citation.]" (*Brodie v. Workers' Comp. Appeals Bd., supra,* 40 Cal.4th at p. 1321.) Where, as in many cases, there is no need for apportionment, the parties would communicate the same message by checking the "permanent disability" box alone.

injured worker's permanent disability rating.[16] To properly calculate a permanent disability award under section 4658, subdivision (d), the WCJ must first determine the number of weeks permanent disability is payable, multiply the number of weeks by the weekly benefit payable and thereafter determine the effect, if any, of subdivision (d)(2) and (3) on the award. The statute requires the permanent disability award to be increased or decreased in every case in which the employer has more than 50 employees. When called upon to resolve permanent disability and apportionment, the WCJ should perform that calculation. The Board's contrary position—that subdivision (d)(2) and (3) are not automatically raised when the parties communicate their desire that the WCJ calculate permanent disability and apportionment—would necessarily result in the WCJ awarding an invalid amount under the statute—either 15 percent too much or 15 percent too little—in an inordinate number of cases, even where the evidence presented was sufficient to permit calculation of the correct award.

The Board's position might be more compelling if the form—which is promulgated by the Department of Industrial Relations (see Cal. Code Regs., tit. 8, § 10253.1)—referenced section 4658 subdivision (d)(2) and (3), or provided a simple method for the parties to communicate the presence or absence of an offer to work. Instead, the parties are apparently expected to check the "other issues" box and write in an explanation. However, the average practitioner is likely to believe that by checking the "permanent disability" and "apportionment" boxes, he or she has communicated to the WCJ that the permanent disability award should be accurately calculated under the appropriate rating schedule, the applicable section 4658 formula and the facts presented. Because the form itself is ambiguous, checking the boxes labeled "permanent disability" and "apportionment" is sufficient to put the WCJ on notice that he or she is to calculate permanent disability award in accord with all pertinent subdivisions of the applicable statutes.

We find support for our conclusion in the decision of the Third District in *Grupe Co. v. Workers' Comp. Appeals Bd.* (2005) 132 Cal.App.4th 977 [34 Cal.Rptr.3d 98]. At issue there was the portion of section 5502, which requires parties to disclose witness information in the pretrial conference statement. According to the provision, " '[e]vidence not disclosed or obtained thereafter shall not be admissible unless the proponent of the evidence can demonstrate

---

[16] For example, under section 4658, subdivision (a), applicable to older claims, if the worker's permanent disability rating is under 10 percent, he or she is entitled to three weeks of disability for each 1 percent of permanent disability within that range—or in the case of a 5 percent disability, 15 weeks.

that it was not available or could not have been discovered by the exercise of due diligence prior to the settlement conference.' " (§ 5502, subd. (e)(3).) In *Grupe Co. v. Workers' Comp. Appeals Bd.*, the employer sought to exclude the testimony of the applicant's vocational expert on the ground the applicant had failed to reveal the substance of the proposed testimony in the pretrial conference statement. The court upheld the Board's conclusion that the WCJ should have given consideration to the testimony, in part because "[t]he standardized pretrial conference statement forms filled out by the parties in this case provide no space for descriptions of the witnesses' proposed testimony, only space to identify witnesses." (*Grupe Co. v. Workers' Comp. Appeals Bd., supra*, 132 Cal.App.4th at p. 987.)

■ Similarly, the pretrial conference form promulgated by the Department of Industrial Relations provides no space for designating section 4658, subdivision (d)(2) or (3), as issues, although whether to supplement or decrease a permanent disability award by 15 percent under these provisions is bound to arise regularly and the average practitioner has no reason to believe that the adjustments mandated by these provisions will not be taken under consideration when the facts warrant it.[17] We conclude, therefore, that when the parties check the boxes labeled "permanent disability" and "apportionment" in the pretrial conference statement, the WCJ is to calculate permanent disability payment under the applicable formula and the evidence presented, which necessarily includes consideration of subdivision (d)(2) and (3) for those claims where subdivision (d) provides the applicable formula.

■ Although we agree with Bontempo that section 4658, subdivision (d)(2), applies to his pulmonary claim, we do not agree with his calculation of its impact on the award. He contends the entire pulmonary permanent disability award should be increased by 15 percent. Permanent disability benefits are payable at the regular rate immediately once the applicant is permanent and stationary. Subdivision (d)(2) allows the employer 60 days after issuance of the medical report declaring the applicant permanent and stationary to decide whether to offer employment and does not require payment of the additional amount until that period has expired. Accordingly, the matter must be remanded for the Board or the WCJ to recalculate the permanent disability award, and to increase only that portion of the award which represents benefits payable 60 days after Dr. Green's report.

---

[17] We take judicial notice that the most recent versions of DWC-CA form 10214(a), the form used when the parties have settled the claim and seek only issuance of a formal award, does include boxes to check for "Labor Code §4658(d) adjustment." Any potential confusion concerning whether the parties intend to raise the section 4658, subdivision (d)(2) and (3) adjustment in a claim set for hearing could be eliminated by similarly modifying DWC-CA form 10253.1, the pretrial conference statement form.

## C. *Section 4658, Subdivision (d)(2), and the Orthopedic Claim*

Bontempo argued in his petition for writ of review that the orthopedic claim should also have been increased by 15 percent under section 4658, subdivision (d)(2). As this contention was raised for the first time on appeal and was not supported by citation to facts or authority, we need not consider it.[18] (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [27 Cal.Rptr.3d 583].)

Moreover, even were we to rule on the merits, it is clear that section 4658, subdivision (d), does not apply to the orthopedic claim. Subdivision (d)(1) specifically provides that its schedule applies to "injuries occurring on or after the effective date of the revised permanent disability schedule adopted by the administrative director pursuant to Section 4660." That date was January 1, 2005. The knee injury occurred in 2003, and is thus outside the general applicability of subdivision (d).

Additionally, section 4658, subdivision (d)(4), provides that "[f]or compensable claims arising before April 30, 2004, the schedule provided in this subdivision shall not apply to the determination of permanent disabilities when there has been either a comprehensive medical-legal report or a report by a treating physician, indicating the existence of permanent disability, or when the employer is required to provide the notice required by Section 4061 to the injured worker."[19] As the City pointed out in its answer to the petition for review, it was required to provide notice under section 4061 in 2003, when Bontempo returned to work after the orthopedic injury.[20] Accordingly, nothing in the provisions of section 4658, subdivision (d), provides for the application of its terms to Bontempo's orthopedic claim.

---

[18] In his writ petition, Bontempo mentioned the orthopedic claim twice in his factual recitations. On page 2, he inaccurately stated that the orthopedic claim (claim No. VNO 0471122) was the subject of his petition for reconsideration to the Board. On page 4, he inaccurately stated that Dr. Paul declared the orthopedic injury permanent and stationary on January 11, 2007. It is not mentioned at all in the legal discussion and analysis.

[19] Section 4061 requires the employer to send notice that permanent disability is or may be payable or that it will not be paid, and to send such notice "[t]ogether with the last payment of temporary disability."

[20] We note that section 4660, subdivision (d), a similar provision, has been interpreted to require the application of the 2005 schedule for rating disabilities to pending claims where the injury occurred prior to 2005, but there was no medical-legal or treating physician's report indicating permanent disability prepared or section 4061 notice sent prior to January 1, 2005. (See, e.g., *Vera v. Workers' Comp. Appeals Bd., supra,* 154 Cal.App.4th at p. 1004; *Tanimura & Antle v. Workers' Comp. Appeals Bd.* (2007) 157 Cal.App.4th 1489, 1495 [69 Cal.Rptr.3d 127].)

## DISPOSITION

The Board's decision is annulled with respect to the award for the pulmonary impairment only. The matter is remanded for recalculation of the permanent disability award for the pulmonary claim in accordance with the views expressed in this opinion. In all other respects, the decision is affirmed.

Willhite, Acting P. J., and Suzukawa, J., concurred.