[No. A134803. First Dist., Div. Five. Aug. 28, 2012.]

CITY OF SEBASTOPOL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and WILLIAM
BRAGA, Respondents.

1198

1200

COUNSEL

Mullen & Filippi and Edward L. Hummer for Petitioner.

Neil P. Sullivan and James T. Losee for Respondent Workers' Compensation Appeals Board.

John F. Krattli, County Counsel, Ralph Rosato, Assistant County Counsel, Susan T. Collins, Deputy County Counsel, and Pauline Tannous, Associate Counsel Counsel, for County of Los Angeles as Amicus Curiae on behalf of Respondent Workers' Compensation Appeals Board.

No appearance for Respondent William Braga.

## Opinion

**SIMONS, J.**—Labor Code section 4658[1] contains several formulas for determining the number of weeks permanent disability benefits are payable for industrial injuries. In 2004, section 4658(d) was added to the code. Section 4658(d)(2) and (3)[2] create incentives for employers of 50 persons or more to timely offer a return to work for an injured employee after his or her disability has become permanent and stationary. Pursuant to section 4658(d)(2), permanent disability payments are to be increased by 15 percent if the employer does not offer the injured employee regular, modified, or alternative work within 60 days of the disability becoming permanent and stationary. Pursuant to section 4658(d)(3)(A), permanent disability payments are to be decreased by 15 percent if the employer does offer that injured employee regular, modified, or alternative work, regardless of whether the employee accepts or rejects the offer.[3]

---

[1] All undesignated section references are to the Labor Code. All further references to section 4658, subdivision (d) will be styled as section 4658(d).

[2] Section 4658(d)(2) provides: "If, within 60 days of a disability becoming permanent and stationary, an employer does not offer the injured employee regular work, modified work, or alternative work, in the form and manner prescribed by the administrative director, for a period of at least 12 months, each disability payment remaining to be paid to the injured employee from the date of the end of the 60-day period shall be . . . increased by 15 percent. . . ."

Section 4658(d)(3) provides:

"(A) If, within 60 days of a disability becoming permanent and stationary, an employer offers the injured employee regular work, modified work, or alternative work, in the form and manner prescribed by the administrative director, for a period of at least 12 months, and regardless of whether the injured employee accepts or rejects the offer, each disability payment remaining to be paid to the injured employee from the date the offer was made shall be . . . decreased by 15 percent.

"(B) If the regular work, modified work, or alternative work is terminated by the employer before the end of the period for which disability payments are due the injured employee, the amount of each of the remaining disability payments shall be . . . increased by 15 percent. An employee who voluntarily terminates employment shall not be eligible for payment under this subparagraph. This paragraph shall not apply to an employer that employs fewer than 50 employees."

[3] " 'Regular work' means the employee's usual occupation or the position in which the employee was engaged at the time of injury and that offers wages and compensation equivalent to those paid to the employee at the time of injury, and located within a reasonable commuting distance of the employee's residence at the time of injury." (§ 4658.1, subd. (a).)

" 'Modified work' means regular work modified so that the employee has the ability to perform all the functions of the job and that offers wages and compensation that are at least 85 percent of those paid to the employee at the time of injury, and located within a reasonable commuting distance of the employee's residence at the time of injury. (§ 4658.1, subd. (b).)

" 'Alternative work' means work that the employee has the ability to perform, that offers wages and compensation that are at least 85 percent of those paid to the employee at the time

Petitioner City of Sebastopol (City), "permissibly self-insured and administered by the Redwood Empire Insurance Fund," seeks writ review of the denial by the Workers' Compensation Appeals Board (WCAB) of City's petition for reconsideration of an order by the workers' compensation judge (WCJ) finding section 4658(d)(3)(A) inapplicable because City's injured employee, William Braga (Braga), lost no time from work. City contends, regardless of the fact Braga lost no time from work, section 4658(d)(3)(A) entitled City to decrease his permanent disability indemnity (PDI) by 15 percent because City made him a timely return-to-work offer. We reject the contention and affirm the decision and order of the WCAB.

## BACKGROUND

The background facts are undisputed. Braga, employed by City as a fire captain from August 5, 2009, through August 10, 2010, sustained an industrial injury resulting in hearing loss. Braga lost no time from work as a result of his injury.[4] In a February 2011 report, Dr. Brian Schindler, the panel-qualified medical evaluator (QME), stated Braga had sustained "bilateral high-frequency hearing loss" and declared the condition was permanent and stationary.[5]

On March 24, 2011, City served Braga with a "Notice of Offer of Regular Work (DWC-AD Form 10118)"[6] and commenced making weekly PDI payments of $195.50, reflecting a 15 percent decrease pursuant to section 4658(d)(3)(A). On March 25, Braga accepted the offer of regular work. On or about April 14, the parties agreed to resolve Braga's claim by way of stipulations establishing his permanent disability at 18 percent. The stipulations submitted for approval indicated that pursuant to section 4658(d)(3)(A), City was entitled to decrease Braga's PDI by 15 percent as of the February date the QME declared Braga's condition permanent and stationary. The "Stipulations with Request for Award" were submitted to the WCAB for approval.[7]

On July 20, 2011, the WCJ issued an order suspending action stating that City was not entitled to decrease Braga's PDI by 15 percent because he lost

---

of injury, and that is located within reasonable commuting distance of the employee's residence at the time of injury." (§ 4658.1, subd. (c).)

[4] The WCAB concluded that Braga continued to perform his "regular work." Since the record does not establish otherwise, we assume that Braga continued to do his regular work, as defined in section 4658.1, subdivision (a), without any accommodation by City.

[5] The QME's report is not included in the record before us.

[6] The notice is not included in the record before us.

[7] The "Stipulations with Request for Award" are not included in the record before us.

no time from work. The order suspending action asked whether City agreed to increase Braga's PDI to the scheduled 18 percent rate of $15,065.

On October 31, 2011, the WCJ issued his findings and award again concluding that, since Braga lost no time from work, City was not entitled to a 15 percent decrease in Braga's PDI pursuant to section 4658(d)(3)(A) and Braga was not entitled to a 15 percent increase in his PDI pursuant to section 4658(d)(2).[8] The WCJ awarded Braga 18 percent PDI at the scheduled rate of $15,065.

City filed a petition for reconsideration of the WCJ's findings and award. City contended, since it made Braga a timely offer of regular work pursuant to section 4658(d)(3)(A), his PDI should have been decreased by 15 percent—from $230 per week to $195.50 per week. City argued the only condition precedent contained in section 4658(d) regarding a 15 percent increase or decrease in PDI is that the employer *offer* regular, modified, or alternative work, or fail to do so.

On December 16, 2011, the WCJ issued his report recommending denial of City's reconsideration petition. The WCJ explained that section 4658(d)(2) and (3) are intended to give employers an incentive to return their injured employees to work. However, when the injured employee is working, these provisions serve no purpose. The WCJ found that, although City made a timely job offer to Braga within 60 days of Braga's injury being declared permanent and stationary, City did not have to make that offer because Braga lost no time from work. The WCJ recognized that, in *Audiss v. City of Rohnert Park* (Apr. 2, 2007, SRO0137956) 2007 Cal.Wrk.Comp. P.D. Lexis 9 (*Audiss*), the WCAB adopted the position urged by City. However, the WCJ was persuaded by the contrary reasoning in two more recent decisions, *Tsuchiya v. County of Los Angeles Sheriff's Dept.* (Apr. 13, 2009, ADJ2508984 (VNO0541888)) 2009 Cal.Wrk.Comp. P.D. Lexis 399 (*Tsuchiya*) and *Anguiano v. Amy's Kitchen* (Nov. 15, 2011, ADJ7724380) 2011 Cal.Wrk.Comp. P.D. Lexis 515 (*Anguiano*).

On January 23, 2012, the WCAB issued its opinion and order denying City's petition for reconsideration. It reiterated that section 4658(d) is intended to give employers an incentive to return their injured employees to work. It concluded, "In cases such as this one, where the employee has lost no time from work and is continuing to perform his or her regular work, the

---

[8] Braga has not challenged the WCJ's finding that he is not entitled to a 15 percent increase in his PDI pursuant to section 4658(d)(2), and that finding is not at issue on appeal.

provisions [of section 4658(d)] have no purpose. Therefore, we find . . . section 4658(d) inapplicable in this case." The WCAB also concluded, "applying . . . section 4658(d) in cases where the injured worker has lost no time from work creates the potential for injured workers to receive a 15 [percent] windfall if a defendant inadvertently fails to send the correct form. A game of 'gotcha' with applicants who have not lost time from work does not further the purpose of this statute."

City filed a timely petition for review of the WCAB decision. (Cal. Rules of Court, rule 8.495.)

## DISCUSSION

Whether section 4658(d)(3)(A) applies when the injured worker has lost no time from work and continues in his or her regular work appears to be a question of first impression for the appellate courts.

Because the WCAB rejected the earlier decision in *Audiss* and adopted the contrary reasoning in *Tsuchiya* and *Anguiano*, we discuss each of those decisions. We are mindful that "[t]he WCAB's conclusions on questions of law are not binding on this court [citations], and the interpretation of a labor statute is a legal question, which we review independently from the determination of the appeals board. [Citation.] Nonetheless, we generally defer to the WCAB's interpretation of labor statutes unless clearly erroneous. [Citations.]" (*City of Long Beach v. Workers' Comp. Appeals Bd.* (2005) 126 Cal.App.4th 298, 316, fn. 5 [23 Cal.Rptr.3d 782].)

In *Audiss, supra,* 2007 Cal.Wrk.Comp. P.D. Lexis 9, three weeks after receiving the treating physician's permanent and stationary report regarding the injured employee, the employer sent the employee a Notice of Offer of Regular Work. Although the employee lost no time from work and was still doing her regular job, she accepted the offer. She was notified that the amount of PDI to which she was entitled reflected a 15 percent reduction pursuant to section 4658(d)(3)(A). Although the employer and employee stipulated to such an award, the WCJ refused to issue the requested award. Instead, it increased the award by 15 percent, pursuant to section 4658(d)(2), based on a finding that the employer's offer of regular work was not timely provided to the employee. In granting the employer's petition for reconsideration, the WCAB found the employer had substantially and actually complied with the requirements of section 4658(d)(3)(A) by offering and providing the employee regular work after her disability had become permanent and stationary. Thus, it concluded that the employer was entitled to the benefit of section

4658(d)(3)(A) as the parties had stipulated. The panel noted, "[t]he purpose of [section 4658(d)] is to provide employers with an inducement to promptly return an injured employee to work . . . ." (*Audiss*, at pp. *7–*8.) It found that the employer had adhered to this policy because the employee was still working at her regular job at the time her disability became permanent and stationary, and her job must have extended the requisite 12 months. The panel reasoned, "[t]he . . . timing of [an employer's] offer [of work] is not dispositive . . . where [the employee] has been [continuously] employed full time in [his or] her regular work." (*Id.* at p. *8.) It stated, "continuation of [an employee's] regular work . . . is sufficiently equivalent to the notice of regular work." (*Id.* at pp. *9–*10.) *Audiss* concluded the employer offered and provided the employee regular work after her disability became permanent and stationary and the employer, therefore, was entitled to the benefit of a 15 percent decrease in the PDI pursuant to section 4658(d)(3)(A).

In *Tsuchiya, supra*, 2009 Cal.Wrk.Comp. P.D. Lexis 399, the employee's industrial injury caused no temporary disability, he remained continuously employed in his regular job duties, and the employer failed to make an offer of regular, modified, or alternative work. The WCJ found that because the employee missed no time from work, the employer was not entitled to a 15 percent decrease in PDI pursuant to section 4658(d)(3)(A), and the employee was not entitled to a 15 percent increase in PDI pursuant to section 4658(d)(2), despite the employer's failure to make the employee a return-to-work offer. In its decision granting the employee's petition for reconsideration, the WCAB noted that section 4658(d)(2) and (3) were intended to provide employers an incentive to return their injured employees to work, and necessarily implied that the injured employee was not, in fact, performing his regular work. It reasoned that the provisions serve no purpose if the employee was continuing to do his or her regular work and are only applicable when the employee is not doing so. *Tsuchiya* expressly disagreed with *Audiss*'s underlying assumption that the employer of an injured employee who has missed no time from work is still obligated to provide the section 4658(d) offer of regular, modified, or alternative work.

*Anguiano, supra*, 2011 Cal.Wrk.Comp. P.D. Lexis 515, is factually similar to the instant case. There, the employee's industrial injury caused no lost time from work and the employer timely provided the employee with a Notice of Offer of Regular Work. The WCJ found the provisions of section 4658(d) were inapplicable and the employer was not entitled to a 15 percent decrease in PDI. As in the instant case, in its petition for reconsideration, the employer argued the plain language of section 4658(d) entitles an employer to a 15 percent decrease in PDI whenever the employer timely offers the employee regular, modified, or alternative work, and the WCJ's finding inserted a new

requirement of temporary disability into section 4658. In reliance on Tsuchiya, the WCAB denied reconsideration, reasoning that the provisions of section 4658(d) are intended to give employers an incentive to return their injured employees to work and the necessary implication is that the injured employee is not continuing to perform his/her regular job duties. The WCAB concluded that since the employee lost no time from work, the employer was not required to offer the employee regular, modified, or alternative work, and the employer was not entitled to a 15 percent decrease in the employee's PDI pursuant to section 4658(d)(3)(A).

 City relies on *Audiss* and contends that nothing in the plain, unambiguous language of section 4658(d)(3)(A) requires an injured worker to miss time from work in order for the 15 percent decrease in PDI to apply. In considering whether section 4658(d)(3)(A) applies in these circumstances, we must ascertain and give effect to the Legislature's intent. (*Ogilvie v. Workers' Comp. Appeals Bd.* (2011) 197 Cal.App.4th 1262, 1271 [129 Cal.Rptr.3d 704] (*Ogilvie*).) " '[W]e turn to the words in the statute and give effect to the statute according to the usual, ordinary import of the language used in framing it.' [Citation.] If the words of a statute are clear and unambiguous, then our inquiry goes no further than their plain meaning. [Citation.] If possible, we give effect to every word and phrase in order to discern legislative purpose, and we consider the statute in the context of its statutory framework. [Citation.] Although our review is de novo, we will give great deference to the WCAB's interpretation of the law unless it is clearly mistaken. [Citation.]" (*Ibid.*) In addition, "statutes governing workers' compensation, including the procedural provisions" (*Bontempo v. Workers' Comp. Appeals Bd.* (2009) 173 Cal.App.4th 689, 704 [93 Cal.Rptr.3d 229] (*Bontempo*)), "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment" (§ 3202).

 On their face, section 4658(d)(2) and (3) do not distinguish between employees who have lost time from work and those who have not, and do not provide that an injured worker must have lost time from work as a condition precedent to increasing or decreasing a PDI award. "When statutory language is clear and unambiguous—that is, has only one reasonable construction—courts usually adopt the literal meaning of that language. [Citations.] An exception to this general rule exists for situations where a literal construction would frustrate the purpose of the statute or produce absurd consequences. [Citation.]" (*Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 21 [115 Cal.Rptr.3d 416].) In order to determine whether an employee's time lost from work is an implied condition precedent to application of section 4658(d), we consider the provisions of the workers' compensation law and the purpose of section 4658.

*Workers' Compensation Law*

■ "California's workers' compensation system was established to provide for the health, safety, and welfare of workers in the event of industrial injury by ' "relieving [them] from the consequences of any injury incurred by employees in the course of their employment." ' [Citations.]" (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1320 [57 Cal.Rptr.3d 644, 156 P.3d 1100] (*Brodie*).) Employees who are temporarily unable to work at their jobs during the period of medical recovery after an industrial injury are entitled to temporary disability benefits to help replace their lost income. (*Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 753 [7 Cal.Rptr.2d 808, 828 P.2d 1195].) Temporary disability benefits are generally paid to eligible employees until they recover or are deemed able to return to work, or they become permanently disabled. (*Bontempo, supra,* 173 Cal.App.4th at p. 700; 1 Casey et al., Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2012) § 4.1, p. 255.)

" '[P]ermanent disability is understood as "the irreversible residual of an injury." ' [Citation.]" (*Brodie, supra,* 40 Cal.4th at p. 1320.) "Payments for permanent disability are designed to compensate an injured employee both for physical loss and reduction in earning capacity." (*Ogilvie, supra,* 197 Cal.App.4th at p. 1270.) " ' "[O]nce the employee's condition has become permanent and stationary, he or she is entitled to permanent disability indemnity . . . ." ' " (*Bontempo, supra,* 173 Cal.App.4th at p. 700.) Loss of earning power is not a prerequisite to permanent disability status. (65 Cal.Jur.3d (2007) Work Injury Compensation, § 301, p. 461.) Moreover, an injured employee need not be out of work in order to receive PDI. (*Ibid.*) Where, as here, temporary disability payments have not been made, payment of PDI is typically owed following the date permanent and stationary status is achieved. (*Gangwish v. Workers' Comp. Appeals Bd.* (2001) 89 Cal.App.4th 1284, 1294 [108 Cal.Rptr.2d 1].)

■ " 'Permanent disability payments are calculated by first expressing the degree of permanent disability as a percentage and then converting that percentage into an award based on a table.' [Citation.]" (*Ogilvie, supra,* 197 Cal.App.4th at p. 1270.) Permanent disability awards are assessed using a schedule " 'expressly intended to manifest "prima facie evidence of the percentage of permanent disability to be attributed to each injury covered by the schedule." (§ 4660, subd. (c).)' [Citation.]" (*Ibid.*)

In 2004, the Legislature enacted Senate Bill No. 899 (2003–2004 Reg. Sess.) (hereafter, Senate Bill No. 899) as an urgency measure providing for comprehensive revisions to California's workers' compensation system to " 'alleviate a perceived crisis in skyrocketing workers' compensation costs.'

[Citations.]" (*Ogilvie, supra*, 197 Cal.App.4th at pp. 1270–1271.) In Senate Bill No. 899, the Legislature amended section 4660, subdivision (a) to require that "a permanent disability award give consideration to an injured employee's 'diminished future earning capacity,' rather than the 'ability of such injured employee to compete in an open labor market.' [Citations.]" (*Ogilvie*, at p. 1271.) However, the terms " 'diminished future earning capacity' " and " 'ability to compete in an open labor market' " have no meaningful difference and nothing in Senate Bill No. 899, which enacted the amendments to section 4660, suggests the Legislature intended this change of phrase "to alter the purpose of an award of permanent disability." (*Ogilvie*, at p. 1272.) In addition, section 4660 now requires a rating schedule based on the American Medical Association's Guides to the Evaluation of Permanent Impairment. The employee's diminished future earnings capacity is a numeric formula based on empirical data and findings prepared by the RAND Institute for Civil Justice. (§ 4660, subd. (b)(1) & (2); *Ogilvie*, at p. 1271; *Bontempo, supra*, 173 Cal.App.4th at p. 695, fn. 6.)

## *Section 4658*

██ Section 4658 is " 'a general provision establishing the amount of compensation benefits for a permanent disability . . . .' [Citation.]" (*Brodie, supra*, 40 Cal.4th at p. 1323.) Section 4658 contains four formulas used to calculate the number of weeks permanent disability benefits are payable; the number of weeks such benefits are payable is dependent on the injured employee's permanent disability rating. (*Bontempo, supra*, 173 Cal.App.4th at pp. 704–705.)[9]

As part of the 2004 revisions to the workers' compensation system, subdivision (d) was added to section 4658, creating a new formula applicable to injuries occurring on or after January 1, 2005. (*Bontempo, supra*, 173 Cal.App.4th at p. 692 & fn. 2.) Pursuant to that new subdivision, after determining the employee's permanent disability rating under section 4660, expressed as a percentage, the WCJ calculates the permanent disability award by first determining the number of weeks that permanent disability is payable, multiplying that number by the weekly benefit payable and then determining the effect, if any, of section 4658(d)(2) and (3) on the award. (*Bontempo*, at p. 705.)[10]

---

[9] For example, under section 4658, subdivision (a), applicable to injuries prior to January 1, 1992, if the employee's permanent disability rating is between 10 and 19.75 percent, the employee is entitled to four weeks of PDI for each 1 percent of permanent disability within that range.

[10] In *Bontempo*, the WCJ awarded the injured employee PDI without applying or considering application of section 4658(d)(2), and the WCAB denied the employee's petition for reconsideration on the ground that he failed to affirmatively raise section 4658(d)(2).

The legislative history indicates that the intent of section 4658(d)(2) and (3) was to provide "return to work incentives," and "provide[] for differing permanent disability . . . payments based on a[n] employee's return to work." (Proposed Conf. Rep. No. 1 on Sen. Bill No. 899 (as amended July 14, 2003) Apr. 15, 2004, p. 1.)[11] Since the 15 percent increase or decrease in PDI is contingent on whether or not the employer timely offers the injured employee regular, modified, or alternative work, and is not contingent on the employee's acceptance of the offer, the return-to-work incentives are directed at the employer. Providing this incentive to employers serves the purpose for which Senate Bill No. 899 was enacted, that is, to reduce workers' compensation costs for California employers. There would seem to be no reason to create a return-to-work incentive when the employee is currently working at his or her regular job and has lost no time from work as a result of the injury which ultimately renders him or her permanently disabled. An injured employee, like Braga, who is ultimately entitled to PDI and remains on his or her regular job with no time lost from work, does not "return to work" in any common understanding of that phrase. Therefore, the employer needs no incentive to return that employee to work, and we fail to see any statutory purpose served by application of section 4658(d)(2) and (3) to such situations.

To the extent City relies on the statement in *Audiss*, "continuation of [an employee's] regular work . . . is sufficiently equivalent to the notice of regular work" (*Audiss, supra*, 2007 Cal.Wrk.Comp. P.D. Lexis 9 at pp. *9–*10), that reliance is misplaced. At issue in *Audiss* was the timing of the employer's offer to return to work. In that context, *Audiss* concluded "[t]he . . . timing of [an employer's] offer [of work] is not dispositive . . . where [the employee] has been [continuously] employed full time in [his or] her regular work," (*id.* at p. *8) since "continuation of [an employee's] regular work . . . is sufficiently equivalent to the notice of regular work (*id.* at

---

(*Bontempo, supra*, 173 Cal.App.4th at pp. 692–693.) The court concluded the evidence that the employee had not worked after mid-2005 because no modified or alternate work was available, combined with the parties' stipulations that the employer was paying the additional 15 percent PDI pursuant to section 4658(d)(2), put the question of that provision's applicability before the WCJ for resolution. (*Bontempo*, at p. 703.) It stated, when the WCJ is called upon to resolve permanent disability and apportionment, it should calculate the permanent disability award and then determine the effect, if any, of section 4658(d)(2) or (3). (*Bontempo*, at p. 705.) Because the employee in *Bontempo* was out of work, *Bontempo* had no occasion to address the issue before us.

[11] It is noteworthy that the form Notice of Offer of Regular Work requires the employer or claims administrator to indicate whether the employee has been determined to be able to return to his or her usual occupation or the position held at the time of injury and the date the employee is "eligible to return to [his or her] job." (Cal. Code Regs., tit. 8, § 10118 [DWC-AD form 10118 (SJDB) Version: 11/2008 (p. 1)].)

pp. *9–*10).” Given its context, the statement in *Audiss* is unhelpful in resolving the issue before us. In any event, that statement shows the weakness of City's position: Of course, no “offer” to return to work needs to be extended to an employee who never stopped working and, therefore, will not be “returning” to a job the employee never left.

City also asserts an additional legislative intent underlying section 4658(d)(2) and (3) is “to encourage employers to provide reasonable accommodations to allow injured employees to continue working. In the present case, despite [Braga's] hearing loss, [City] was able to keep the employee on the job. In doing so, [City] fully complied with the requirements of [section] 4658(d)(3)(A).” First, we disregard this assertion because it is unsupported by any citation of legal authority, or citation to legislative history or reasoned analysis. (See *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2 [87 Cal.Rptr.2d 654, 981 P.2d 499].) Second, the assertion is not borne out by our review of the legislative history regarding Senate Bill No. 899. Third, this argument is unsupported by the record before us. The record establishes that Braga continued to perform his “regular work.” As we noted previously “regular work” is defined as “the employee's usual occupation or the position in which the employee was engaged at the time of injury . . . .” (§ 4658.1, subd. (a).) Even assuming section 4658(d)(2) and (3) were intended to encourage employers to provide employees reasonable accommodations, no evidence establishes that City “accommodated” Braga in order for him to continue to perform his regular work. City may not be rewarded by decreasing Braga's PDI pursuant to section 4658(d)(3)(A) for an accommodation it did not provide.

Next, City echoes the dissenting opinion to the WCAB decision challenged here. That dissent noted that section 4658(d) should be construed in light of the statutory scheme, and, pursuant to section 4660, subdivision (a), permanent disability includes the employee's diminished future earning capacity. The dissent reasoned, “If an [employee] is able to continue in his [or her] pre-injury employment and perform full duties, he [or she] has less diminished future earning capacity than an employee who cannot. In addition to providing employers with an incentive to return employees to work, . . . section 46[5]8(d) adjusts an injured worker's compensation to better reflect his or her diminished future earning capacity. [¶] . . . [A] close reading of this statute has convinced me that there is no exception for continuously employed applicants. [S]ection 4658(d) does not distinguish between [employees] who have lost time from work and those who have not.” The dissent concluded section 4658(d)(3)(A) is applicable, entitling City to a 15 percent decrease in Braga's PDI.

We disagree. As we noted previously, the terms "diminished future earning capacity" utilized in the 2004 amendment to section 4660 and "ability to compete in an open labor market," utilized in section 4660 prior to the 2004 amendment, were held to have no meaningful difference and nothing in Senate Bill No. 899, which enacted the amendments to section 4660, suggests the Legislature intended this change of phrase to alter the purpose of an award of permanent disability. (*Ogilvie, supra*, 197 Cal.App.4th at p. 1272.) Instead, section 4660, subdivision (a) expressly provides, in part, "[i]n determining the *percentages* of permanent disability, . . . consideration [should be] given to an employee's diminished future earning capacity." (Italics added.) The percentage of permanent disability is determined by a rating schedule pursuant to section 4660. Section 4658 provides formulas for determining the number of weeks the injured employee is entitled to PDI based in part on the percentage of permanent disability already calculated pursuant to section 4660. Nothing in the legislative history regarding Senate Bill No. 899 suggests that section 4658(d)(2) and (3) were intended to reflect an employee's diminished future earning capacity.

■ Finally, City argues that, pursuant to the WCAB's interpretation of section 4658(d)(3)(A), regardless of an employer's compliance in making a timely offer of work, an injured employee who loses no time from work is treated more favorably than an employee who sustains an industrial injury that results in a period of temporary disability.[12] But this point does not undermine the statutory purpose to provide the employer with an incentive to return the injured employee to work. Where, as here, the injury causes no time lost from work and the employee continues to perform his or her regular work, application of section 4658(d)(3)(A), to impose a 15 percent decrease in the employee's PDI gives a windfall to the employer because no return-to-work incentives are necessary.[13]

■ We conclude that section 4658(d)(3)(A) is inapplicable because Braga remained in his regular position with no time lost from work.

---

[12] City also argues that the WCAB's interpretation of section 4658(d)(3)(A) penalizes City for accommodating Braga in order to keep him on the job. As we noted previously, the record before us does not establish that Braga received any accommodation from City.

[13] In its amicus curiae brief in support of the WCAB's decision and order, the County of Los Angeles relies on *Tsuchiya, supra*, 2009 Cal.Wrk.Comp. P.D. Lexis 399 and asserts that, where the injury causes no time lost from work and the employee continues to perform his or her regular work, application of section 4658(d)(3)(A) would give employers "a windfall by saving 15 [percent] on the weekly payments to injured workers [and the] injured worker[s] would be punished for missing no time from work as a result of their industrial injury."

## DISPOSITION

The WCAB's opinion and order denying petition for reconsideration is affirmed. Each party shall bear its own costs on appeal.

Jones, P. J., and Bruiniers, J., concurred.